## EDWARD FALBY *v.* COMMISSIONER OF CORRECTION
## (11647)

FOTI, LAVERY and LANDAU, Js.

Argued March 29—decision released August 10, 1993

*Karen A. Goodrow,* for the appellant (petitioner).

*Richard F. Jacobson,* assistant state's attorney, for the appellee (respondent).

LAVERY, J. The petitioner appeals from the denial of his petition for a writ of habeas corpus. He claims that the trial court improperly determined (1) that erroneous advice given by his attorney did not deprive him of effective assistance of counsel, and (2) that his attorney's erroneous advice did not render his guilty plea involuntary and therefore invalid. We affirm the judgment of the trial court.

The relevant facts are undisputed. On June 13, 1978, a nine year old girl was strangled and left to die in a stream near her home in Westport. Three days later, the petitioner was arrested and confessed to the crime. After a jury trial, the petitioner was convicted of murder under General Statutes § 53a-54a (a),[1] and sentenced to serve a term of twenty-five years to life. That judgment was set aside, however, when our Supreme Court ruled that the trial court had improperly failed to charge on lesser included offenses. *State* v. *Falby,* 187 Conn. 6, 30, 444 A.2d 213 (1982).

At his second trial, the state presented largely the same case. On October 11, 1983, before offering any defense evidence, the petitioner pleaded guilty to mur-

[1] General Statutes § 53a-54a (a) provides: "A person is guilty of murder when, with intent to cause the death of another person, he causes the death of such person or of a third person or causes a suicide by force, duress or deception; except that in any prosecution under this subsection, it shall be an affirmative defense that the defendant committed the proscribed act or acts under the influence of extreme emotional disturbance for which there was a reasonable explanation or excuse, the reasonableness of which is to be determined from the viewpoint of a person in the defendant's situation under the circumstances as the defendant believed them to be, provided nothing contained in this subsection shall constitute a defense to a prosecution for, or preclude a conviction of, manslaughter in the first degree or any other crime."

der under the *Alford*[2] doctrine in violation of General
Statutes § 53a-54a (a). In return for his plea, the peti-
tioner received a sentence of fifteen years to life in
prison.

The petitioner appeared before the state board of
parole on June 10, 1986. After taking statements from
the petitioner and the victim's family, the board denied
parole. Two years later, the petitioner applied for a writ
of habeas corpus, challenging the validity of his five
year old guilty plea.

## I

The petitioner claims that his guilty plea is invalid
because he lacked effective assistance of counsel. The
right to effective assistance of counsel is guaranteed
by the sixth and fourteenth amendments to the United
States constitution.[3] *Levine* v. *Manson,* 195 Conn. 636,
639, 490 A.2d 82 (1985). A petitioner claiming ineffec-
tive assistance of counsel must prove (1) that his attor-
ney made errors so serious as to cease functioning as
counsel, and (2) that " 'there is a reasonable probabil-
ity that, but for counsel's unprofessional errors, the
result of the proceeding would have been different.' "
*Phillips* v. *Warden,* 220 Conn. 112, 132, 595 A.2d 1356
(1991), quoting *Strickland* v. *Washington,* 466 U.S. 668,
694, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984). "The
ultimate focus of inquiry must be on the fundamental
fairness of the proceeding being challenged." *Phillips*
v. *Warden,* supra, 134.

"We first consider our scope of review. Although the
underlying historical facts found by the habeas court
may not be disturbed unless they were clearly erro-

---

[2] *North Carolina* v. *Alford,* 400 U.S. 25, 31, 91 S. Ct. 160, 27 L. Ed. 2d
162 (1970).

[3] While effective assistance of counsel is also guaranteed by article first,
§ 8, of the Connecticut constitution, the petitioner frames his claims only
under federal law. We shall likewise limit our review.

neous, whether those facts constituted a violation of the petitioner's rights under the sixth amendment 'is a mixed determination of law and fact that requires the application of legal principles to the historical facts of this case.' *Cuyler* v. *Sullivan,* 446 U.S. 335, 342, 100 S. Ct. 1708, 64 L. Ed. 2d 333 (1980). As such, that question requires plenary review by this court unfettered by the 'clearly erroneous standard.' Id. . . ." (Citations omitted.) *Phillips* v. *Warden,* supra, 131.

## A

The petitioner's claim of attorney error arises from the advice he received before he pleaded guilty. On October 1, 1983, only ten days before his plea, General Statutes § 54-126a took effect, permitting victims or their families to appear and testify at parole board hearings.[4] The habeas court found that the petitioner and his attorney discussed this statute during their consideration of the guilty plea. The habeas court further found that his attorney told the petitioner that the new law would not affect him. This statement was incorrect. The petitioner claims that this erroneous advice deprived him of effective assistance of counsel.

"[W]hen the defendant waives his state court remedies and admits his guilt, he does so under the law then existing; further, he assumes the risk of ordinary error

[4] General Statutes § 54-126a provides: "(a) For the purposes of this section, 'victim' means the victim, the legal representative of the victim or a member of the deceased victim's immediate family.

"(b) At a hearing held by a panel of the board of parole for the purpose of determining the eligibility for parole of an inmate incarcerated for the commission of a class A, B or C felony or for a violation of section 53a-60a, 53a-60c, 53a-72b, 53a-103a or 53a-216, such panel shall permit any victim of the crime for which the inmate is incarcerated to appear before the panel for the purpose of making a statement for the record concerning whether the inmate should be released on parole or the nature of any terms or conditions to be imposed upon any such release. In lieu of such appearance, the victim may submit a written statement to the panel and the panel shall make such statement a part of the record at the parole hearing."

in either his or his attorney's assessment of the law and facts." *McMann* v. *Richardson,* 397 U.S. 759, 774, 90 S. Ct. 1441, 25 L. Ed. 2d 763 (1970). An attorney's inaccurate statement of law to a defendant is not, per se, conduct outside the range of reasonable representation. See *Myers* v. *Manson,* 192 Conn. 383, 396, 472 A.2d 759 (1984) (denying petitioner's claim of ineffective assistance of counsel based on an inaccurate statement of law). Errors alone do not give rise to a claim of ineffective assistance; only errors so serious that counsel ceased functioning as counsel guaranteed by the sixth amendment. See *Phillips* v. *Warden,* supra, 132.

In this case, the petitioner claims prejudice from the attorney's incorrect interpretation of the applicability to the petitioner of the new law governing live victim testimony at parole hearings. It is significant, however, that prior to enactment of § 54-126a the parole board considered written victim testimony. The new law changed only the form of victim testimony in that the victim is now permitted to appear and give a statement. Therefore, the petitioner's only claim is that he was prejudiced by the physical presence of the victim's family, not by the fact that they gave testimony.

The *McMann* standard for attorney competence, as applied in a guilty plea context, includes ordinary error. See *Hill* v. *Lockhart,* 474 U.S. 52, 58, 106 S. Ct. 366, 88 L. Ed. 2d 203 (1985) ("[i]n the context of guilty pleas, the first half of the *Strickland* v. *Washington* [supra,] test is nothing more than a restatement of the standard of attorney competence already set forth in . . . *McMann* v. *Richardson* [supra]"). The error made by the attorney related to a procedural matter in a parole hearing, to be held at some indeterminate date, years in the future. The misstatement was, at best, ordinary error. Thus, the petitioner has failed to prove the first prong of the test for ineffective assistance of counsel.

## B

Even if the petitioner had succeeded in proving his attorney's conduct deficient, his claim of ineffective assistance fails. The second prong of the *Strickland* test for ineffective assistance of counsel requires that the petitioner prove prejudice. *Phillips* v. *Warden,* supra. In a guilty plea context, "the defendant must show that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." *Hill* v. *Lockhart,* supra, 59. "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Strickland* v. *Washington,* supra, 694. A different result must be sufficiently probable to undermine confidence in the actual outcome. *Bunkley* v. *Commissioner of Correction,* 222 Conn. 444, 456 n.14, 610 A.2d 598 (1992). It must be reasonably probable that the petitioner remains burdened by an unreliable conviction. Id., 463.

The petitioner claims that he would not have pleaded guilty had he known that the victim's family would be permitted to testify at his future parole hearing. The record, however, reveals facts that counter that assertion. First, the petitioner faced at his second trial substantially the same case that had resulted in a prison sentence of twenty-five years to life. Second, our Supreme Court had ruled his graphic and exhaustive confession constitutionally valid and admissible. *State* v. *Falby,* supra, 16, 18–19. Third, his psychiatric defense had failed at the first trial and his intention to use an alibi defense at his second trial would have directly conflicted with his confession. Fourth, the state was permitted at his second trial to enter evidence of his prior similar assault of a fourteen year old girl. Id. Fifth, the petitioner's primary concern was eligibility for parole; pleading guilty cut ten years off his possible sentence advancing his eligibility by five years.

In addition to these factors, his *Alford* plea permitted the petitioner to avoid revealing his guilt to his parents. The petitioner admitted at his habeas trial that his parents' health had suffered as a result of his criminal problems and he feared that he would "lose" them if they learned the truth. The petitioner stated that he knew that continuing his second trial would require him to testify and "openly talk about the case." By pleading guilty he avoided that.

Likewise, in his 1978 confession to the murder, the petitioner said that he feared that his parents would be ruined and that he could not face them. Similarly, at his sentencing hearing five years later, the petitioner's concern for his family was "the most strongly motivating factor" in pleading guilty. Finally, the petitioner told the parole board in 1986 that he still feared revealing his guilt to his parents. Thus, the petitioner had a long-standing desire to shield his parents from the truth. He admits that this desire was a factor in choosing to plead guilty because it meant that he could avoid testifying and "hurting" his parents. In light of the case against him and his concern for his parents, we cannot say that it is probable that he would have continued with the trial had he known of the actual parole board procedure. We certainly do not find a probability sufficient to undermine confidence in the actual outcome: guilt of murder.[5] *Bunkley* v. *Commissioner of Correction,* supra.

## II

The petitioner next claims that his attorney's erroneous advice made his plea involuntary, undermining its validity. Guilty pleas must be intelligent, voluntary and knowing. *State* v. *Gilnite,* 202 Conn. 369, 381, 521

[5] It is most significant in this context that, in addition to his confession, the petitioner admitted the murder at his parole hearing in 1986 and at his habeas trial in 1991.

A.2d 547 (1987). A defendant must be aware of all direct consequences of his plea. *Sherbo* v. *Manson*, 21 Conn. App. 172, 181, 572 A.2d 378, cert. denied, 215 Conn. 808, 576 A.2d 539 (1990), citing *Brady* v. *United States*, 397 U.S. 742, 748, 90 S. Ct. 1463, 25 L. Ed. 2d 747 (1970). Direct consequences have definite, immediate and largely automatic effects on the range of a defendant's punishment. *Sherbo* v. *Manson*, supra, 182 n.7. "There is no requirement, however, that the defendant be advised of every possible consequence of such a plea." *State* v. *Gilnite*, supra, 383.

Practice Book § 711 defines the direct consequences relevant in this context.[6] *Sherbo* v. *Manson*, supra, 181. Thus, a valid guilty plea requires that a defendant know the nature of the charge, the minimum and maximum sentence, any statutory preclusion of a suspended sentence and the right to proceed with trial. Id. The record amply demonstrates that the petitioner did have the requisite knowledge for a guilty plea, and distinguishes this case from *State* v. *Collins*, 207 Conn. 590, 598, 542 A.2d 1131 (1988). In that case, the defendant was misinformed about the length of his minimum sentence under a plea. Because the length of time spent in prison is crucial to an informed and voluntary plea,

---

[6] Practice Book § 711 provides: "The judicial authority shall not accept the plea without first addressing the defendant personally and determining that he fully understands:

"(1) The nature of the charge to which the plea is offered;

"(2) The mandatory minimum sentence, if any;

"(3) The fact that the statute for the particular offense does not permit the sentence to be suspended;

"(4) The maximum possible sentence on the charge, including, if there are several charges, the maximum sentence possible from consecutive sentences and including, when applicable, the fact that a different or additional punishment may be authorized by reason of a previous conviction; and

"(5) The fact that he has the right to plead not guilty or to persist in that plea if it has already been made, and the fact that he has the right to be tried by a jury or a judge and that at that trial he has the right to the assistance of counsel, the right to confront and cross-examine witnesses against him, and the right not to be compelled to incriminate himself."

the attorney's misstatement called into question the voluntariness of the plea. In this case, however, no error was made regarding the length of time the petitioner would spend in prison; the error dealt with the form of victim testimony during his parole hearing. In *State* v. *Collins,* the error was substantive: what date would the defendant go free. In this case, the error was procedural: what form would the parole hearing take.

The form of testimony received by the parole board does not definitely, immediately and automatically affect the range of a defendant's punishment. Further, the procedure followed by the parole board is not information of which a defendant must be aware under § 711 of the Practice Book. Therefore, parole board procedure is an indirect consequence of a guilty plea. See *Sherbo* v. *Manson,* supra, 182 and n.7 (observing that commitment procedure of state correctional department is indirect); *Hill* v. *Lockhart,* 894 F.2d 1009, 1010 (8th Cir.), cert. denied, 497 U.S. 1011, 110 S. Ct. 3258, 111 L. Ed. 2d 767 (1990) (incorrect advice about parole can be collateral issue not justifying habeas relief). "The voluntariness of a guilty plea is not undermined by lack of explanation as to the mechanics of a parole system." *Hunter* v. *Fogg,* 616 F.2d 55, 62 (2d Cir. 1980); see also *United States* v. *Schifano,* 748 F. Sup. 172, 175 (S.D.N.Y. 1990) (stating that defendant's ignorance that parole board could require him to serve entire sentence did not invalidate guilty plea); *Hornak* v. *Warden,* 40 Conn. Sup. 238, 239, 488 A.2d 850 (1985) (noting that terms of parole eligibility are indirect and collateral consequences of plea). The petitioner's guilty plea is not undermined by the fact that he was incorrectly advised about parole board procedure.

Finally, if the petitioner relied on gross misadvice about an indirect consequence, his plea would have been involuntary, unintelligent and, therefore, invalid. *Hornak* v. *Warden,* supra. Examples of gross misadvice

that invalidate a guilty plea include an attorney's poor research and incorrect calculation of a defendant's parole eligibility. Id., citing *Strader* v. *Garrison,* 611 F.2d 61, 63 (4th Cir. 1979) (defendant misadvised about effect of concurrent sentence on eligibility); *O'Tuel* v. *Osborne,* 706 F.2d 498, 499 (4th Cir. 1983) (defendant eligible ten years later than attorney calculated). Conversely, where the sentence remains undetermined or the error minor, parole eligibility calculation errors alone are not gross misadvice. *Hornak* v. *Warden,* supra, 240, citing *Little* v. *Allsbrook,* 731 F.2d 238, 240 (4th Cir. 1984) (uncertainty about sentence created error of fifteen years); *Hill* v. *Lockhart,* 731 F.2d 568, 571 (8th Cir. 1984), aff'd, 764 F.2d 1279, aff'd, 474 U.S. 52, 60, 106 S. Ct. 366, 88 L. Ed. 2d 203 (1985) (error of three years).

The attorney error in this case does not rise to the level of gross misadvice. The petitioner was correctly advised about his eligibility for parole. The sole error involved the type of procedure that would be followed at any future parole hearings. This mistake is of a different order of magnitude than errors that constitute gross misadvice.

Significantly, the petitioner seeks a writ of habeas corpus, which serves, principally, as a "bulwark against convictions that violate 'fundamental fairness.' " *Bunkley* v. *Commissioner of Correction,* supra, 460–61, quoting *Engle* v. *Isaac,* 456 U.S. 107, 126, 102 S. Ct. 1558, 71 L. Ed. 2d 783 (1982). The writ of habeas corpus exists to assist those "whom society has grievously wronged." *Veal* v. *Warden,* 28 Conn. App. 425, 430, 611 A.2d 911, cert. denied, 224 Conn. 902, 615 A.2d 1046 (1992), quoting *Kuhlmann* v. *Wilson,* 477 U.S. 436, 447, 106 S. Ct. 2616, 91 L. Ed. 2d 364 (1986). Ultimately, the petitioner must show that he is burdened

by an unreliable conviction. *Bunkley* v. *Commissioner of Correction,* supra, 461. He has failed to do so. See footnote 5.

The judgment is affirmed.

In this opinion the other judges concurred.