[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
The above-captioned petition for habeas corpus came before this court for trial on the merits of the petitioner's claim that counsel rendered him ineffective assistance at his trial on charges of felony murder, robbery and burglary.
In his amended petition, the petitioner specified two respects in which he claimed that his counsel, John Kelly, was ineffective. At trial, the petitioner advised this court, by counsel, that he was pursuing only one ground, the claim that Attorney Kelly "failed to lay down an adequate enough foundation CT Page 6599 for the admission of an exculpatory polygraph." (Amended Petition, para. 8a.) Specifically, the petitioner claimed that a polygraph examiner had found that he was telling the truth in answering several questions about the events that gave rise to the criminal charges but that counsel had not attempted to lay the foundation concerning the reliability of the test that might have persuaded the trial judge to declare the test admissible.
The petitioner filed a direct appeal from his conviction. One of the grounds raised in that appeal was that the trial court had improperly excluded the polygraph test. In rejecting that claim, the Connecticut Supreme Court referred to its "general rule" barring polygraph evidence. State v. Esposito, 235 Conn. 802, 831
(1996), citing State v. Miller 202 Conn. 463, 484-86 (1987). The Supreme Court noted that it had "repeatedly held that neither the results of a polygraph test nor the willingness of a witness to take such a test is admissible in Connecticut Courts." State v.Esposito, 235 Conn. 831, citing State v. Duntz, 213 Conn. 207,238 (1992); State v. Plourde, 208 Conn. 455 (1988) cert. denied,488 U.S. 1034 (1981); State v. Miller, 202 Conn. 484-86. The Supreme Court noted that it was not accepting "the defendant's invitation in this case to adopt the more flexible test created by the United States Supreme Court in Daubert [v. Merrell DowPharmaceuticals. Inc., ___ U.S. ___; 113 S.Ct. 2786,125 L.Ed.2d 469 (1993)] which looks to the relevance and reliability of the evidence." State v. Esposito, 235 Conn. 832.
The Supreme Court observed that "a day may come when we consider whether to adopt the federal rules set forth in Daubert
for evaluating the admissibility of scientific evidence" but concluded that the Esposito appeal did not present the occasion for considering that issue because the appellant had not made a sufficient offer of proof of his ability to show that the particular polygraph evidence that he sought to have admitted met the Daubert standard.
The petitioner now claims that his trial counsel's failure to attempt to establish that his polygraph met the Daubert standard constituted ineffective assistance of counsel.
It is useful initially to set forth the standard applicable to claims of ineffective assistance of counsel. The Connecticut Supreme Court has adopted the standard announced by the United States Supreme Court in Strickland v. Washington, 466 U.S. 668,687 (1984): CT Page 6600
 First, the defendant must show that counsel's performance was deficient. . . . Second, the defendant must show that the deficient performance prejudiced the defense.
See Bunkley v. Commissioner of Correction, 222 Conn. 444, 446
(1992); Falby v. Commissioner of Correction, 32 Conn. App. 438,443 (1993). Ineffective representation has been defined as representation not "within the range of competence demanded of attorneys in criminal cases." McMann v. Richardson, 347 U.S. 759,770-71 (1970). The petitioner must show that counsel's performance fell below an objective standard of reasonableness and was outside the wide range of competent professional assistance Strickland, supra.
Prejudice from the performance found to be outside the wide range of competence must be shown by establishing that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. "Strickland, 466 U.S. at 694. A reasonable probability is a "probability sufficient to undermine confidence in the outcome."id.; Bunkley, supra, 222 Conn. 445-46, 456 n. 14.
In making his claim that his trial attorney was ineffective in failing to make an offer of proof to establish admissibility of the polygraph under the Daubert standard, the petitioner assumes that the polygraph examination at issue was in fact conducted in a manner and with the indicia of reliability that would have been found to meet the Daubert requirements, that the Supreme Court would have so found, and that it would have appliedDaubert, such that his attorney could be said to have fallen below the standard for counsel by failing to use the evidence available to him that was adequate to meet the Daubert tests for admissibility. If the particular polygraph were performed incorrectly, or if the machine itself had not been checked recently, a lawyer who failed to attempt to get a court to be the first in Connecticut to apply Daubert to polygraph evidence could not be faulted for that failure, since it would have been doomed to failure because of such faults.
A court applying Daubert must consider the reliability of the technique in general and of the particular administration of it. None of the witnesses who testified at the habeas hearing was even able to describe the test that the petitioner took. The court has examined the polygraph report, ID Ex. WW, at trial. That CT Page 6601 exhibit does not reveal whether any internal controls on reliability were used, whether the machine had been tested, or any other details concerning reliability. The court is therefore unable to determine whether the material available to trial counsel was such that it would have stood a good chance of being found to meet the Daubert standard, if that standard had been applied, or whether the test itself was so flawed that it would not have been a suitable vehicle for a test case of the issue of admissibility of exculpatory polygraphs.
The criminal defense lawyer who testified that failure to attempt a test case fell below the standard of performance for attorneys had no knowledge of the quality of the polygraph evidence available to trial counsel. Even if this court were to accept the proposition that failing to make a test case to challenge a longstanding evidentiary rule is performance outside the wide range of professional assistance, Strickland v.Washington, 466 U.S. 668, 687 (1984), no such determination can be made without evidence that the test had in fact been performed in a manner that made such an effort potentially successful.
The petitioner's position is akin to faulting counsel for not calling a witness to establish an alibi when that witness has not been shown to have had anything helpful to say.
Viewed another way, in order to satisfy the second requirement of Strickland, that is, that counsel's omissions prejudiced the outcome, the petitioner must show that the offer of proof that he claims should have been made was proof sufficient to budge the longstanding precedents.
The only indication of what evidence was available to establish admissibility under Daubert is the polygraph report itself, which was marked for identification (Ex. WW) outside the presence of the jury on October 6, 1993. That exhibit does not contain an explanation of the test methodology sufficient to allow a determination that trial counsel had available to him information sufficient to make such a showing of reliability that the polygraph results would be admissible if the Daubert approach were adopted by Connecticut's courts.
Even if this court concluded that the polygraph evidence would have been admitted if that court had laid a foundation sufficient to meet the Frye test, the defendant must establish that the introduction of the polygraph evidence would be so CT Page 6602 convincing that it would have resulted in a different outcome. He has not done this.
As set forth by the Supreme Court in its decision on the petitioner's direct appeal, State v. Esposito, 235 Conn. 805-807, 808, 811, 819, 825 (1996), the evidence against the petitioner was strong. It included evidence that he was present at the time of the crime and that his description of his actions and the events was at odds with the forensic evidence. This court does not find that admission into evidence of an exculpatory polygraph report would, under those circumstances, have led to a different result.
The petitioner was charged as an accessory. The questions he was asked in the polygraph examination did not preclude his guilt as an accessory, since he would have been found to have intentionally aided another in committing the crimes even if the jury found he had truthfully answered that he had not done the precise things that were the subject of the questions, which were as follows:
Did you plan with Brian Greco to rob Robert Bessinger?
Did you try to prevent Brian Greco from shooting Robert Bessinger?
Did you help Brian Greco rob Robert Bessinger?
 Were you running out of the Bessinger house when Robert Bessinger was shot?
The questions do not eliminate the petitioner's guilt in entering the house, standing guard over Bessinger's wife and Robert Velardi while Brian Greco took Robert Bessinger upstairs to steal from his safe, using a gun.
The petitioner has failed to establish that his trial counsel failed to perform within the range of competent counsel in failing to pursue the admissibility of the polygraph evidence. The petitioner has also failed to prove that the polygraph evidence was reliable enough to have been admitted, or that it would have produced a different outcome if admitted, so that he has failed to meet the second requirement of Strickland.
The petition is dismissed.
CT Page 6603 Beverly J. Hodgson Judge of the Superior Court