TERRANCE WILLIAMS *v.* COMMISSIONER
OF CORRECTION
(AC 29528)

Flynn, C. J., and Gruendel and Robinson, Js.*

---

* The listing of judges reflects their seniority status on this court as of the date of oral argument.

Argued January 11—officially released April 13, 2010

*Wayne A. Francis*, special public defender, for the appellant (petitioner).

*Bruce R. Lockwood*, senior assistant state's attorney, with whom, on the brief, were *John C. Smriga*, state's attorney, *Jonathan C. Benedict*, former state's attorney, and *Nicholas J. Bove, Jr.*, senior assistant state's attorney, for the appellee (respondent).

*Opinion*

FLYNN, C. J. The petitioner, Terrance Williams, appeals following the granting of his petition for certification to appeal from the judgment of the habeas court denying his amended petition for a writ of habeas corpus. On appeal, the petitioner contends that he is entitled to a reversal of his convictions and a new trial because his trial counsel provided ineffective legal assistance. Specifically, the petitioner claims that (1) he was denied the effective assistance of counsel because counsel provided erroneous legal advice, including incorrect information on the possible sentence he was facing for certain crimes, causing the petitioner to enter unknowing, unintelligent and involuntary guilty pleas, and (2) he was denied effective legal assistance because counsel (a) failed to attend most of the petitioner's court hearings and did not engage in ongoing meaningful plea negotiations with the state because of those absences, and (b) improperly advised the petitioner to forgo a suppression hearing regarding the legality of the seizure of contraband from his person. We affirm the judgment of the habeas court.

The following procedural history will help to set the backdrop of the petitioner's appeal. The petitioner was charged in four separate dockets: in docket number

CR05-212701 (docket 701), he was charged with criminal mischief in the third degree in violation of General Statutes § 53a-117; in docket number CR06-213473 (docket 473), he was charged with possession of a narcotic substance with intent to sell by a person who is not drug-dependent in violation of General Statutes § 21a-278 (b), possession of a narcotic substance with intent to sell within 1500 feet of a public housing project in violation of General Statutes § 21a-278a (b) and criminal trespass in the third degree in violation of General Statutes § 53a-109; in docket number CR06-213903 (docket 903), he was charged with attempt to commit larceny in the third degree in violation of General Statutes §§ 53a-49 and 53a-124, larceny in the third degree in violation of General Statutes § 53a-124, forgery in the second degree in violation of General Statutes § 53a-139 and possession of narcotics in violation of General Statutes § 21a-279 (a), and, in docket number CR06-216517 (docket 517), he was charged with assault in the third degree in violation of General Statutes § 53a-61.

On July 18, 2006, pursuant to a plea agreement, the state filed a substituted information in docket 473, charging the petitioner with possession of a narcotic substance with intent to sell in violation of General Statutes § 21a-277 (a). The petitioner then pleaded guilty to the following charges: in docket 473, possession of a narcotic substance with intent to sell; in docket 903, larceny in the third degree; and in docket 517, assault in the third degree. The state then entered a nolle prosequi in docket 701, and it stated that it would agree to a nolle prosequi on the assault in the third degree charge at the time of sentencing if it determined that it could not prove that charge. On August 18, 2006, the court imposed the following sentence: in docket 473, nine years incarceration, execution suspended after four years, followed by five years of probation; and, in docket 903, four years incarceration, to run

concurrently with the sentence imposed in docket 473. The state then conceded that it could not prove the assault in the third degree charge in docket 517 because the victim was uncooperative. The court then vacated the petitioner's guilty plea on that charge, and the state entered a nolle prosequi. The state also entered a nolle prosequi on all remaining charges in docket 903. The petitioner, thereafter, filed a grievance against his counsel, Michael Gannon, who, ultimately, was suspended indefinitely from the practice of law.[1]

On July 2, 2007, the petitioner filed an amended petition for a writ of habeas corpus, claiming ineffectiveness of legal counsel. After a hearing on the merits of the amended petition, the court denied the petition but granted certification to appeal. This appeal followed. Facts will be set forth as necessary throughout the opinion.

Initially, we note that the petitioner did not file a direct appeal or move to vacate his guilty pleas. Nevertheless, "a petitioner who has not moved to withdraw his guilty plea or challenged his plea on direct appeal need not establish cause and prejudice if he can fulfill the two-pronged test for ineffective assistance of counsel. . . . That test, as laid out in *Strickland* v. *Washington*, 466 U.S. 668, 687, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984), and modified for guilty plea cases in *Hill* v. *Lockhart*, 474 U.S. 52, 58–59, 106 S. Ct. 366, 88 L. Ed. 2d 203 (1985), requires petitioners to establish that: (1) counsel's representation fell below an objective standard of reasonableness; and (2) there is a reasonable probability that, but for counsel's errors, the defendant would not have pleaded guilty and would have insisted

---

[1] The precise reasons for Gannon's suspension are not relevant to this opinion. The habeas court did note, however, that Gannon was suspended, in part, for his failure to have a written fee agreement with the petitioner in the petitioner's criminal case.

on going to trial." *Crawford* v. *Commissioner of Correction*, 294 Conn. 165, 189–90, 982 A.2d 620 (2009).

"To satisfy the performance prong, the petitioner must show that counsel's representation fell below an objective standard of reasonableness. . . . A petitioner who accepts counsel's advice to plead guilty has the burden of demonstrating on habeas appeal that the advice was not within the range of competence demanded of attorneys in criminal cases. . . . The range of competence demanded is reasonably competent, or within the range of competence displayed by lawyers with ordinary training and skill in the criminal law. . . . Reasonably competent attorneys may advise their clients to plead guilty even if defenses may exist. . . . A reviewing court must view counsel's conduct with a strong presumption that it falls within the wide range of reasonable professional assistance and that a tactic that appears ineffective in hindsight may have been sound trial strategy at the time. . . .

"To satisfy the prejudice prong, the petitioner must show a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial. . . . Reasonable probability does not require the petitioner to show that counsel's deficient conduct more likely than not altered the outcome in the case, but he must establish a probability sufficient to undermine confidence in the outcome." (Citations omitted; internal quotation marks omitted.) *Baillargeon* v. *Commissioner of Correction*, 67 Conn. App. 716, 721–22, 789 A.2d 1046 (2002). "Because both prongs . . . must be established for a habeas petitioner to prevail, a court may dismiss a petitioner's claim if he fails to meet either prong." (Internal quotation marks omitted.) *Pierce* v. *Commissioner of Correction*, 100 Conn. App. 1, 11, 916 A.2d 864, cert. denied, 282 Conn. 908, 920 A.2d 1017 (2007).

In a habeas corpus appeal, "[t]he underlying histori-
cal facts found by the habeas court may not be disturbed
unless the findings were clearly erroneous. . . . His-
torical facts constitute a recital of external events and
the credibility of their narrators. . . . Questions of law
and mixed questions of law and fact receive plenary
review." (Internal quotation marks omitted.) *Crawford*
v. *Commissioner of Correction*, supra, 294 Conn. 174.
In the present case, the petitioner does not challenge
the factual findings of the habeas court. Rather, his
claims raise either questions of law or mixed questions
of law and fact. Accordingly, our review is plenary.
See id.

I

The petitioner claims that his guilty pleas violated his
rights to due process under the fifth and the fourteenth
amendments to the United States constitution because
they were not knowing, intelligent and voluntary due
to the ineffective assistance of counsel.[2] The petitioner
claims that counsel provided erroneous legal advice
and information, including incorrect information about
his sentence on the plea agreement and misinformation
about the maximum possible sentence he faced on some
of the charges, thus leading him to enter pleas that were
in violation of his constitutional rights. The respondent,
the commissioner of correction, argues that the habeas
court properly concluded that the petitioner's pleas
were not involuntary and unintelligent due to the inef-
fective assistance of counsel. We agree with the
respondent.

"Guilty pleas must be intelligent, voluntary and know-
ing. . . . A defendant must be aware of all direct conse-
quences of his plea. . . . Where the petitioner relied

---

[2] We note that procedurally the petitioner is raising these claims as ineffec-
tive assistance of counsel claims, i.e., sixth amendment violations, and not
as direct due process claims under the fifth and fourteenth amendments.

on gross misadvice about an indirect consequence, his plea would have been involuntary, unintelligent and, therefore, invalid." (Citation omitted; internal quotation marks omitted.) *Hernandez* v. *Commissioner of Correction*, 82 Conn. App. 701, 709, 846 A.2d 889 (2004). "Moreover, because a guilty plea is an admission of all the elements of a formal criminal charge, it cannot be truly voluntary unless the defendant possesses an understanding of the law in relation to the facts. . . . An essential part of understanding the law as it applies to the facts is knowing the maximum amount of time that the defendant could spend in confinement." (Citation omitted; internal quotation marks omitted.) *Duperry* v. *Solnit*, 261 Conn. 309, 320, 803 A.2d 287 (2002).

## A

The petitioner claims that he was coerced into pleading guilty by the promises of counsel, made outside of the plea agreement. Specifically, he argues that counsel told him he would get a term of eight years, with three years to serve and with five years of probation, instead of the nine years, with four to serve and the five years of probation that he ultimately received. We are not persuaded by the petitioner's argument. Furthermore, even if we were to agree that counsel told the petitioner that he would get less time than he actually received, it is clear that the petitioner suffered no prejudice because the court went over the terms of the plea agreement, and the petitioner acknowledged that he understood the terms of the agreement as recited by the court.

The following facts are necessary to our resolution of the petitioner's claim. When the petitioner was about to enter a guilty plea on the amended informations, it was agreed that if the state could not prove the assault in the third degree charge because of the alleged victim's refusal to cooperate, the plea on that charge would be vacated at sentencing and a nolle would enter on that

charge. The petitioner wanted the assault charge nolled so that he would not have a conviction of a crime of violence, which could help him secure an earlier parole date. As agreed, at the time of sentencing, the petitioner's plea on the assault charge was vacated, and the state entered a nolle on that charge because the victim did not want to cooperate.

The petitioner argued before the habeas court that his guilty pleas were unconstitutional because he was told by counsel that the plea agreement, giving him a total effective sentence of nine years incarceration suspended after four years, with five years probation, would be reduced to eight years, suspended after three years, if a nolle entered on the assault in the third degree charge at sentencing. After reviewing the evidence, which included a transcript from the day the petitioner entered his guilty pleas, the habeas court found that there was no support for the petitioner's position. We agree with the habeas court.

The transcript from the July 18, 2006 proceeding reveals the following. A hearing on the petitioner's motion to suppress in docket 473 was scheduled to be heard that day, but the petitioner, instead, accepted a plea offer from the state. The petitioner withdrew his not guilty pleas and elected to plead guilty as stated previously. The court then stated:

"The Court: Total effective sentence of nine, suspended after four and five years of probation is the agreed upon disposition. All right . . . I'm going to ask you some questions about your cases and your decision to enter these pleas. If there is anything I say that you don't understand or for any reason you need more time to talk to Mr. Gannon, let me know and I'll stop and I'll give you an opportunity to do that."

The court then canvassed the petitioner to ensure that he had spoken to counsel, that he was not under

the influence of alcohol or drugs, that he understood the charges against him and what needed to be proven to convict him of those charges, that he knew of his right to a trial and to confront witnesses and that he had not been threatened to enter his pleas. The court also asked the petitioner:

"The Court: All right . . . you have entered into this plea agreement with the understanding that on the date of sentencing . . . I will impose a total effective sentence of nine years suspended after service of four years, followed by five years of probation; is that your understanding of the plea agreement?

"[The Petitioner]: Yeah. Yes.

"The Court: And regardless of what happens on the assault charge, that is still going to be the sentence, nine suspended after four followed by five years of probation; you understand that?

"[The Petitioner]: Yeah.

"The Court: Do you understand that?

"[The Petitioner]: Yeah."

We conclude that the court was very clear in going over the terms of the plea agreement with the petitioner, and the petitioner was very clear that he understood those terms and that they would not change regardless of what happened with the assault charge. On the basis of the record before us, we are not persuaded, nor was the habeas court persuaded, that counsel had told the petitioner anything different from what the trial court explained to be the petitioner's agreed upon sentence. Furthermore, even if we agreed that counsel had told the petitioner something different, because the court fully informed the petitioner of the terms, and the petitioner acknowledged that he understood those terms,

the petitioner would be unable to demonstrate prejudice. Accordingly, we find no merit to this claim.

B

The petitioner next claims that counsel, in violation of the petitioner's constitutional rights, gave him inaccurate information as to the maximum possible sentence on several of the crimes charged in the original information, leading him to enter into an uninformed plea agreement. He argues that "[b]ecause counsel did not review the plea offers with the [p]etitioner based upon accurate information, his plea of guilty was therefore not made knowingly and intelligently . . . ." Although we agree that counsel gave inaccurate information to the petitioner, we conclude that such misinformation did not affect the constitutionality of the petitioner's plea.

The following facts, as found by the habeas court, are relevant to our resolution of the petitioner's claim. Aside from the narcotics related charges in docket 473, "the petitioner faced charges of forgery in the second degree, larceny and attempted larceny in the third degree, and possession of narcotics, which stemmed from a . . . case involving bank fraud. It is true that Gannon incorrectly advised the petitioner that his exposure was thirty years on these charges. The petitioner could not have been convicted of both larceny and attempted larceny; see Practice Book § 42-29; and the evidence indicated that the petitioner in this case was not guilty of possession of narcotics, but rather only possession of less than four ounces of marijuana [in docket 903]. Thus, the petitioner faced an actual maximum exposure of eleven years on these cases. See General Statutes §§ 21a-279 (c), 53a-139 and 53a-124."[3]

---

[3] A violation of § 21a-279 (c) carries a maximum sentence of one year imprisonment, §53a-139 carries a maximum sentence of five years imprisonment and § 53a-124 carries a maximum sentence of five years imprisonment.

The court also explained: "The petitioner contends that he could not have been found guilty of forgery in the Fairfield judicial district, in which

The petitioner argues that if he had known that he only faced eleven years on these charges, not including the narcotics related charges from docket 473, he would not have accepted the plea agreement, would have proceeded with the motion to suppress the seized drugs in docket 473 and would have gone to trial. We are not persuaded.

First, it is unclear whether the court concluded that counsel was ineffective in giving the petitioner the wrong information on the sentence he was facing for the charges not related to docket 473. The court specifically found that counsel had given the wrong information, but it concluded, nonetheless, that counsel "acted reasonably in advising the petitioner to plead guilty with a plea agreement calling for a sentence of four years to serve." Our own review of the record leads us to conclude that counsel was ineffective when he provided the petitioner with incorrect information regarding the maximum possible sentence he was facing on several of the dockets but that the petitioner has failed to prove that, absent such incorrect information, he would have insisted on going to trial.

As found by the habeas court, the petitioner was facing a maximum sentence of eleven years after weeding out charges that could not be proved or otherwise

Bridgeport is located. The court disagrees. Although the stipulation of facts [entered into by the petitioner and the respondent] reveals that a check apparently forged by the petitioner in the amount of $4100 was deposited into the petitioner's account through an automated teller machine in Waterbury, which is outside of the Fairfield judicial district, there was no evidence of where the actual forgery took place. The petitioner, who bears the burden [of proof] in this case, did not prove that the forgery took place outside of the Fairfield judicial district, where the other offenses in this case took place. The petitioner, in fact, told Gannon that he was guilty of all charges. Moreover, even if the forgery took place in Waterbury, dismissal of the Bridgeport forgery charges would only have led to [the petitioner] being charged with the same offense in the Waterbury judicial district." We agree with the habeas court's analysis and conclude that further discussion of this issue would be futile.

were not sustainable by the prosecution. He also was facing, however, a charge of possession with intent to sell, as a subsequent offender, possession within 1500 feet of a public housing project and criminal trespass in the third degree. See General Statutes §§ 21a-278 (b), 21a-278a (b) and 53a-109. These charges carried a possible maximum sentence of just over twenty-eight years imprisonment.[4] The respondent contended, and the habeas court agreed, that the state also could have added conspiracy and a narcotics distribution offense to the information, which would have added another twenty-five years to the petitioner's maximum exposure on docket 473. Even without the possible additional charges, however, the petitioner was facing more than twenty-eight years on docket 473 and another eleven years on the other dockets, for a total maximum exposure of nearly forty years. The petitioner admitted, and he does not contend otherwise on appeal, that he was guilty of the charges in docket 473 and that he had no real defense to the charges for which he pleaded guilty. He argues, nonetheless, that he would not have pleaded guilty and would have taken his chances on the motion to suppress the narcotics that were seized related to docket 473 if he had known that the other charges carried only a maximum of eleven years.

In rejecting this contention, the habeas court found that the petitioner was aware that if he had rejected the state's plea agreement and had moved forward with the suppression hearing, the agreement no longer would have been available and that any subsequent offer

---

[4] The habeas court stated that the petitioner faced a possible sentence of twenty-nine years on these charges. A review of the charges and the associated penalties reveals that the petitioner faced a maximum penalty of twenty-eight years, three months imprisonment. The maximum penalty for a violation of § 21a-278 (b), as a subsequent offender, was twenty-five years; for a violation of § 21a-278a (b), the maximum penalty was three years consecutive; and for a violation of § 53a-109, which is a class c misdemeanor, the maximum penalty was three months pursuant to General Statutes § 53a-36.

would have exposed the petitioner to more prison time. Counsel also had informed the petitioner that there were no guarantees on the motion to suppress and that he was facing considerable time if they were not successful. The record also reveals that the petitioner was quite concerned with not having a crime of violence among his convictions because it would affect his parole eligibility date, and, once counsel was successful in getting the state to agree to nolle that charge if the victim refused to cooperate, the petitioner was ready to move forward with the plea agreement. Taking all of these things into consideration, we are not persuaded by the petitioner's self-serving contention that had counsel provided him with accurate information, he would not have accepted the plea agreement and would have gone to trial.

## II

The petitioner also claims that he was denied the effective assistance of counsel and is entitled to a new trial because counsel (1) failed to attend most of the petitioner's court hearings and did not engage in ongoing meaningful plea negotiations with the state because of his absences and (2) improperly advised the petitioner to forgo a suppression hearing regarding the legality of the search of his person. Employing the same standard of review expressed previously in this opinion, we will consider each of these claims in turn.

## A

The petitioner claims that he was deprived of the effective assistance of counsel because counsel failed to attend most of the petitioner's court hearings and did not engage in ongoing meaningful plea negotiations with the state due to those absences. The petitioner argues that the habeas court correctly determined that counsel was ineffective for failing to attend many of the scheduled court dates but that it was incorrect in

holding that the petitioner failed to show prejudice. We disagree with the petitioner.

The following additional facts, as found by the habeas court, are necessary to our resolution of the petitioner's claim. "Gannon filed an appearance for the petitioner in late May [2006]. Gannon was on trial in another courthouse at the time, having been called to trial on short notice. For the May 24 and 31 scheduled court dates in the petitioner's cases, Gannon faxed requests for continuances. . . . On June 1, Gannon failed to appear, and the court continued the case again. The case next came to court on June 16. Gannon did not appear but had attorney Robert Photos file an appearance and represent the petitioner on that date. . . . Gannon appeared in court with the petitioner on June 27. . . . On July 18, Gannon appeared with the petitioner for a hearing on a motion to suppress . . . [and just] prior to the beginning of the suppression hearing, the petitioner indicated that he would accept [the] revised offer . . . ."

The court found that Gannon's failure to attend court on some of the dates mentioned constituted deficient performance but that the petitioner could not prove that he was prejudiced. The petitioner argues that "[t]he court erred . . . in its finding that the petitioner was not prejudiced because it remained unclear as to whether Gannon's attendance on June 16, 2006, would have yielded a different outcome." He further argues that "these absences prevented the [petitioner] from getting the benefit of meaningful plea negotiations." We do not necessarily agree that counsel's failure to attend court on these dates, especially when he was called to trial on a different case on short notice, was deficient. We, nonetheless, do agree with the habeas court that the petitioner cannot prove that he was prejudiced under the *Hill-Strickland* test, which requires that the petitioner prove that he would have gone to trial but

for counsel's deficient performance. See *Crawford* v. *Commissioner of Correction*, supra, 294 Conn. 189–90. Additionally, even under some modification of this test, the petitioner has not proven that plea negotiations suffered due to counsel's absences.

As the habeas court found, the petitioner was facing nearly forty years in prison on the charges that reasonably might have moved forward and up to sixty-five years if the prosecutor amended the information in docket 473 to include additional charges that the state asserted could be added to conform to the evidence.[5] The habeas court found that the petitioner had admitted to Gannon that he was guilty of these charges, and Gannon still was able to secure a sentence of nine years, suspended after four years, with five years probation, during negotiations with the prosecutor. The court found, and we agree, that Gannon acted reasonably in advising the petitioner to plead guilty and to accept this plea offer. The petitioner's speculation that if Gannon had been there on these other dates, he may have been able to get a better offer, is nothing more than mere speculation that does not equate to prejudice. See *Narumanchi* v. *DeStefano*, 89 Conn. App. 807, 815, 875 A.2d 71 (2005) ("[s]peculation and conjecture have no place in appellate review").

B

The petitioner next claims that he was denied effective legal assistance and is entitled to a new trial because counsel improperly handled the motion to suppress and acted deficiently in advising him to forgo the hearing on the motion to suppress. The respondent argues that the "habeas court properly concluded that

[5] This calculation assumes that the assault in the third degree and criminal mischief charges would have been nolled and that the narcotics charge in docket 903 would have been reduced to possession of less than four ounces of marijuana.

Gannon's handling of the motion to suppress did not prejudice the petitioner because the petitioner could not prevail on his claim that 'the seizure of the narcotics from [his] groin area exceeded the scope of a permissible frisk.' " We agree with the respondent.

"In order to show ineffective assistance for the failure to make [or proceed with] a suppression motion, the underlying motion must be shown to be meritorious, and there must be a reasonable probability that the verdict would have been different if the evidence had been suppressed." (Internal quotation marks omitted.) *Ricks* v. *Commissioner of Correction*, 98 Conn. App. 497, 514, 909 A.2d 567 (2006), cert. denied, 281 Conn. 907, 916 A.2d 49 (2007).

From the testimony and exhibits submitted at the habeas trial, the court found the following facts with respect to the circumstances leading to the seizure of the narcotics from the petitioner. "At around midnight on January 11, 2006, Bridgeport police were conducting surveillance at the P.T. Barnum apartments, an area that was notorious for gun and drug crimes. They observed a person whom they later identified as the petitioner, along with four other individuals, engage in what they reasonably suspected was a drug deal outside one of the apartment buildings. The suspects apparently detected the surveillance and took flight onto a nearby highway in two different automobiles. Officers stopped one of the vehicles on a highway exit ramp several miles from the original scene. When the officers requested that the driver get out of the car, the driver at one point reached into his left waistband area with his left hand, a move that an officer reasonably believed was an effort to obtain a weapon. The driver then failed to comply with an order to place his hands behind his back, and a scuffle with the officers ensued.

"In the meantime, the police placed the sole passenger, who was the petitioner, in handcuffs outside the

car. The petitioner was not under arrest at this point. An officer began a patdown and felt a hard item in the petitioner's groin area that was not consistent with normal male anatomy. The petitioner proceeded to lean forward to block the officer's vision. Because the police had experience with the practice of drug dealers from the P.T. Barnum area concealing drugs in their groin, a second officer thereupon pulled the petitioner's pants out and reached into them. He pulled out a plastic bag [that had been] tied to the petitioner's penis. The bag . . . contained 7.6 grams of crack cocaine."

On the basis of these facts and our Supreme Court's analysis in *State* v. *Trine*, 236 Conn. 216, 224–34, 673 A.2d 1098 (1996), the habeas court concluded that the search of the petitioner was reasonable and that, once the officer felt an atypical bulge in the petitioner's groin area, the officer "was authorized to seize the item causing [the bulge]." Accordingly, the court concluded that the petitioner could not demonstrate that he was prejudiced by any alleged deficiency in counsel's performance related to the motion to suppress.

On appeal, the petitioner argues that "[t]he court erred when it found that [he] was not prejudiced on trial counsel's advice that he forgo the suppression hearing when evidence [presented to] the habeas court supports a finding that the search performed upon [him] was unreasonable under the fourth amendment to the United States constitution." He further explains that the seizure was unreasonable because the police knew that this was contraband and not a weapon, and, yet, they proceeded to remove the narcotics that were tied to the petitioner's penis while they were on a public roadway.[6] The petitioner does not contest that the

---

[6] The petitioner argues in part that the unreasonableness of this matter results from the officers pulling down the petitioner's pants and underpants, exposing his penis, while on an off-ramp from a public highway. The habeas court, however, credited the testimony of the police officers that they pulled open the petitioner's pants and reached in to seize the narcotics. "The

police had justification to conduct a patdown for weapons. His argument relates to the reasonableness of the police officers' seizure of the narcotics from his genitals while in public view. The petitioner reasons that they should have taken him to the police station or to another private area before physically going into his pants, touching his genitals and retrieving what they knew was contraband. We agree with the habeas court that the seizure was reasonable under the circumstances of this case. Furthermore, we conclude that even if we agreed with the petitioner that the seizure should have occurred elsewhere, once the officer conducted the patdown and recognized that the petitioner was secreting narcotics in his groin area, the contraband would have been the source of inevitable discovery, and the petitioner would not have been successful in suppressing such evidence. Accordingly, he cannot prove that he was prejudiced by counsel's handling of the motion to suppress.

"Under the inevitable discovery rule, evidence illegally secured in violation of the defendant's constitutional rights need not be suppressed if the state demonstrates by a preponderance of the evidence that the evidence would have been ultimately discovered by lawful means. . . . To qualify for admissibility the state must demonstrate that the lawful means which made discovery inevitable were possessed by the police and were being actively pursued prior to the occurrence of the constitutional violation. . . . *State* v. *Clark*, 255 Conn. 268, 280 n.29, 764 A.2d 1251 (2001); see *Nix* v. *Williams*, 467 U.S. 431, 444, 104 S. Ct. 2501, 81 L. Ed. 2d 377 (1984). The inevitable discovery rule applies in a situation in which, as here, the police would have legally discovered the evidence eventually." (Internal

determination of a witness' credibility is the special function of the trial court. [An appellate court] cannot sift and weigh evidence." (Internal quotation marks omitted.) *State* v. *Trine,* supra, 236 Conn. 227.

quotation marks omitted.) *State* v. *Vallejo*, 102 Conn. App. 628, 640, 926 A.2d 681, cert. denied, 284 Conn. 912, 931 A.2d 934 (2007).

In this case, the petitioner concedes that the contraband would have been secured at the police station had the officers not secured it at the scene. In fact, he argues not that the seizure should not have occurred, but only that the seizure should not have occurred on the public roadside. Therefore, there is no dispute that the evidence would have been obtained later if the officers had not secured it at the scene. While the police were conducting a legitimate patdown of the defendant, they felt a hard item, inconsistent with normal male anatomy, which, on the basis of their training and experience, they thought to be contraband that had been secured to the petitioner's penis. Once they had a reasonable and articulable suspicion that the petitioner was secreting contraband on his person, they were justified in seizing those illegal substances. Whether such seizure took place on the roadside or in the police station, the fact is that the narcotics would have been seized, and the petitioner would not have been successful in suppressing this evidence. Therefore, even if we agreed with the petitioner that the police had acted unreasonably in seizing the drugs while on the public roadway, the evidence inevitably would have been discovered. The police would have found the contraband when they brought the petitioner to the police station. Accordingly, the petitioner would not have been successful on the motion to suppress the contraband as evidence.

The judgment is affirmed.

In this opinion the other judges concurred.