JEROME HILL *v.* COMMISSIONER OF CORRECTION
(AC 29594)

Flynn, C. J., and Harper and Hennessy, Js.

Argued September 10—officially released November 10, 2009

W. *Theodore Koch III*, special public defender, with whom, on the brief, was *William T. Koch, Jr.*, special public defender, for the appellant (petitioner).

*Adam E. Mattei*, special deputy assistant state's attorney, with whom, on the brief, were *Jonathan C. Benedict*, former state's attorney, and *Gerard P. Eisenman*, senior assistant state's attorney, for the appellee (respondent).

*Opinion*

HARPER, J. The petitioner, Jerome Hill, appeals following the denial of his petition for certification to appeal from the judgment of the habeas court, *Schuman, J.*, denying his amended petition for a writ of habeas corpus. The petitioner claims that the court abused its discretion when it denied his petition for

certification to appeal. He claims that the habeas court improperly found that the trial court was correct in finding him competent to enter a plea and that the habeas court improperly found that his trial counsel provided effective assistance. Our examination of the record and briefs persuades us that the denial of the petition for certification was proper. Accordingly, we dismiss the petitioner's appeal.

After pleading guilty under the *Alford* doctrine; *North Carolina* v. *Alford*, 400 U.S. 25, 91 S. Ct. 160, 27 L. Ed. 2d 162 (1970); to three counts of sexual assault in the first degree and one count of attempt to commit sexual assault in the first degree, the petitioner was sentenced to an effective term of twenty years imprisonment, suspended after fifteen years, and twenty years probation. Thereafter, on May 16, 2005, the petitioner filed a petition for a writ of habeas corpus. The following procedural history and factual findings of the habeas court are relevant to the disposition of the petitioner's appeal.

Shortly after the petitioner was arrested, senior assistant public defender William R. Schipul entered an appearance on his behalf. At Schipul's request, the petitioner was referred to a psychologist, Ralph S. Welsh, for a psychological evaluation. Welsh evaluated the petitioner on May 15, 2001, and noted that based on his observations, the petitioner was "within the mild range of mental retardation" and had "intellectual limitations in all areas." He further noted that the petitioner's psychological tests revealed a "pattern consistent with a long-term alcohol dementia . . . ." Welsh reevaluated the petitioner on August 3, 2001. After this reevaluation, Welsh concluded that "the [petitioner], because of his mild dementia, does not fully understand the charges against him, is going to have difficulty assisting his attorney in his own defense and appears to be an individual who does not fully comprehend the gravity of the charges against him." After Welsh's reevaluation,

the petitioner was evaluated by the Bridgeport office of court evaluations on September 4, 2001. At a competency hearing on October 1, 2001, a member of the team that evaluated the petitioner for the office of court evaluations testified that the petitioner was not, at that time, competent but that there was a substantial probability that he could be restored to competency. The court, *Rodriguez, J.*, found the petitioner not competent but restorable and sent him to the Connecticut Valley Hospital, Whiting Forensic Division, to be restored to competency.

On December 11, 2001, a second competency hearing was held. At this hearing, the court had before it a report issued by mental health experts at Connecticut Valley Hospital that concluded that "[the petitioner] possesses rational as well as factual understanding of the proceedings against him. . . . [The petitioner] can effectively assist in his own defense. He is aware of the charges against him and the possible penalties. . . . It is therefore, the recommendation of the team that [the petitioner] be found competent to stand trial at the forthcoming hearing." The court also heard the testimony of Harry Hernandez, a social worker who was a member of the team that treated the petitioner at Connecticut Valley Hospital. Hernandez testified that "[w]e believe that [the petitioner] can participate in this—in working with his attorney and discussing his charges with the attorney and working on his defense." At the conclusion of the competency hearing, the court found that the petitioner was competent to stand trial.

On April 3, 2002, the court accepted the petitioner's plea of guilty under the *Alford* doctrine to three counts of sexual assault in the first degree and one count of attempt to commit sexual assault in the first degree. During the plea canvass, he was again represented by Schipul.

After the petitioner entered his plea but before he was sentenced, Welsh evaluated him twice more, on April 18 and June 6, 2002. After each evaluation, Welsh wrote that in his opinion, the petitioner was incapable of understanding the court proceedings he was involved in and was not competent.[1]

On June 11, 2002, a hearing was held to determine whether a new competency evaluation should be ordered. At the hearing, Welsh testified in regard to his two latest evaluations. Welsh was questioned by both Schipul and the prosecution. Schipul argued at length that the court should order another competency review by the state mental health officials on the basis of Welsh's reports. The prosecution counterargued that Welsh's reports in essence repeated the same conclusions he had reached earlier regarding the petitioner's competence and that Welsh's conclusions regarding the petitioner's competence were incorrect. After hearing arguments from both counsel, the court found that "[n]o reasonable doubt concerning [the petitioner's] competency has been raised thus far," and, therefore, there was no need to order a new competency evaluation before the petitioner was sentenced.

As a result, on June 28, 2002, the court sentenced the petitioner. At the sentencing hearing, the court weighed the petitioner's various mental health issues against the "heinous" nature of his crimes. The court also noted that "the plea agreement that [the petitioner's] lawyer worked very hard to get for [him] is fair under all of the circumstances."

On May 16, 2005, the petitioner filed his petition for a writ of habeas corpus. The habeas trial was based on

---

[1] Schipul testified at the habeas trial that he initially had requested these examinations by Welsh for the purpose of mitigation at sentencing, not to raise the issue of competency. When, however, Welsh raised the issue of competency again, Schipul felt compelled to raise it with the court and requested a hearing on competency.

amended petitions filed July 30 and December 12, 2007, in which the petitioner alleged that it was improper for the court to accept his plea of guilty because he was not competent at the time it was entered and that he was deprived of the effective assistance of trial counsel. As to the claim related to the effectiveness of his trial counsel, the petitioner alleged, in substance, that Schipul was ineffective in that he failed to make the case adequately that the petitioner was incompetent to enter a plea.

By memorandum of decision filed December 20, 2007, Judge Schuman denied the petition, declining to second-guess the decision of the trial court regarding the petitioner's competence and finding that the petitioner failed to prove ineffective assistance of counsel. The court thereafter denied the petition for certification to appeal from its decision. This appeal followed. Additional facts will be set forth as necessary.

We begin by setting out our standard of review. In reviewing a petitioner's challenge to an adverse judgment of the habeas court, we apply a two part test. When confronted with a denial of certification to appeal from an adverse ruling of the habeas court, a petitioner must first "demonstrate that the habeas court's ruling constituted an abuse of discretion." *Simms* v. *Warden*, 230 Conn. 608, 612, 646 A.2d 126 (1994). "To prove an abuse of discretion, the petitioner must demonstrate that the [resolution of the underlying claim involves issues that] are debatable among jurists of reason; that a court could resolve the issues [in a different manner]; or that the questions are adequate to deserve encouragement to proceed further." (Internal quotation marks omitted.) *Weinberg* v. *Commissioner of Correction*, 112 Conn. App. 100, 106, 962 A.2d 155, cert. denied, 291 Conn. 904, 967 A.2d 1221 (2009). If the petitioner is unable to overcome this initial hurdle, our inquiry ends. If, however, he succeeds in establishing an abuse of

discretion, "the petitioner must then demonstrate that the judgment of the habeas court should be reversed on its merits." *Simms* v. *Warden*, supra, 612.

I

We will first review the petitioner's claim that the habeas court improperly found that the trial court properly determined that he was competent to enter a plea of guilty and be sentenced.

Although it is well established that a person cannot be convicted of or plead guilty to a crime while he is legally incompetent to stand trial; see, e.g., *State* v. *Gonzalez*, 205 Conn. 673, 686, 535 A.2d 345 (1987); our courts begin with the presumption that an accused is competent to stand trial. General Statutes § 54-56d (b). "Section 54-56d establishes the procedural requirements for competency determinations. A court may undertake a competency examination upon a motion by the defendant or the state and in some circumstances must evaluate the defendant's competency sua sponte." *State* v. *Johnson*, 253 Conn. 1, 22, 751 A.2d 298 (2000). "[A] trial court *must* order a competency hearing at any time that facts arise to raise a reasonable doubt about the defendant's competency to continue with the trial." (Emphasis added.) *State* v. *DesLaurier*, 230 Conn. 572, 589 n.12, 646 A.2d 108 (1994).

"[A] defendant is not competent if the defendant is unable to understand the proceedings against him or her or to assist in his or her own defense." General Statutes § 54-56d (a). "[W]e review the trial court's determination of competency to plead guilty under an abuse of discretion standard. Essentially, we examine the relevant record to determine whether the trial court reasonably could have concluded that the petitioner was competent to plead guilty. In doing so, we give deference to the trial court's findings of fact because the trial court has the benefit of firsthand review of

the defendant's demeanor and responses during the canvass." *State* v. *Johnson*, supra, 253 Conn. 27 n.26.

Judge Schuman ruled that it was not constitutional error for Judge Rodriguez to accept the petitioner's guilty plea and impose sentence. The habeas court declined to "second-guess" the decision of the trial court that the petitioner was competent to plead guilty, finding that "Judge Rodriguez relied largely on his opportunity, which this court did not have, to observe the petitioner at the time and hear the testimony of . . . Welsh. This opportunity put Judge Rodriguez in an advantageous position." Finally, the habeas court found that "the question of competence is a legal rather than a medical conclusion. . . . There is no basis to say that Judge Rodriguez reached the wrong conclusion based on the evidence before him."

We agree with the habeas court that the findings of the trial court should not be disturbed. Before the petitioner was sentenced, the trial court held no fewer than three separate hearings on the subject of his competency, was presented with conflicting reports by qualified experts as to the petitioner's competency and, more importantly, had the opportunity to consider these reports after having witnessed the petitioner's demeanor and behavior firsthand. Although Welsh testified at the hearing held just before the petitioner was sentenced in June, 2002, that the petitioner was unable to understand the proceedings or to contribute to his defense, Welsh's conclusions, in sum and substance, did not contradict his earlier evaluations of the petitioner's mental state. He simply disagreed with other reports and testimony that indicated that the petitioner was competent to stand trial. The trial court, citing the correct legal standard, stated on the record that "[t]he court today finds that there is no reasonable doubt concerning the [petitioner's] competency raised by . . . Welsh. The court makes that finding based upon

the evidence presented today *and based upon the prior evaluations*, which the court has referred to, and having considered again the evaluations made by . . . Welsh." (Emphasis added.)

Although the petitioner submitted new expert testimony regarding his competency at his habeas trial, this evidence was not available to the trial court and, in any event, the testimony of these experts does not seriously call into question the prior findings of mental health experts who evaluated the petitioner *at the time he pleaded* and whom the trial court credited. Given the deference that is to be afforded to the trial court on review, and after our own review of the evidence that was before it, we cannot conclude that the habeas court abused its discretion in determining that there was no error with regard to the trial court's finding that the petitioner was competent.

II

We next review the petitioner's claim of ineffective assistance of counsel. "In a habeas appeal, this court cannot disturb the underlying facts found by the habeas court unless they are clearly erroneous, but our review of whether the facts as found by the habeas court constituted a violation of the petitioner's constitutional right to effective assistance of counsel is plenary." (Internal quotation marks omitted.) *Mock* v. *Commissioner of Correction*, 115 Conn. App. 99, 103–104, 971 A.2d 802, cert. denied, 293 Conn. 918, 979 A.2d 490 (2009).

"A habeas petitioner can prevail on a constitutional claim of ineffective assistance of counsel [only if he can] establish both (1) deficient performance, and (2) actual prejudice. . . . For ineffectiveness claims resulting from guilty verdicts, we apply the two-pronged standard set forth in *Strickland* v. *Washington*, 466 U.S. 668, 687, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984); *Levine* v. *Manson*, 195 Conn. 636, 639–40, 490 A.2d 82 (1985).

For ineffectiveness claims resulting from guilty pleas, we apply the standard set forth in *Hill* v. *Lockhart*, 474 U.S. 52, 59, 106 S. Ct. 366, 88 L. Ed. 2d 203 (1985), which modified *Strickland*'s prejudice prong." (Citations omitted; internal quotation marks omitted.) *Baillargeon* v. *Commissioner of Correction*, 67 Conn. App. 716, 721, 789 A.2d 1046 (2002). Therefore, because the petitioner accepted his trial counsel's advice to plead guilty, to prevail on the ineffective assistance of counsel claim, the petitioner has the burden of (1) demonstrating that the advice was not within the range of competence demanded of attorneys in criminal cases and (2) showing "a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." (Internal quotation marks omitted.) Id., 722.

"To satisfy the performance prong, the petitioner must show that counsel's representation fell below an objective standard of reasonableness. . . . A petitioner who accepts counsel's advice to plead guilty has the burden of demonstrating on habeas appeal that the advice was not within the range of competence demanded of attorneys in criminal cases. . . . The range of competence demanded is reasonably competent, or within the range of competence displayed by lawyers with ordinary training and skill in the criminal law. . . . Reasonably competent attorneys may advise their clients to plead guilty even if defenses exist. . . . A reviewing court must view counsel's conduct with a strong presumption that it falls within the wide range of reasonable professional assistance and that a tactic that appears ineffective in hindsight may have been sound trial strategy at the time." (Citations omitted; internal quotation marks omitted.) Id., 721–22.

The habeas court found that Schipul "was and is an experienced trial attorney who had many interactions

with the petitioner and considerable information about him from other sources."[2] Schipul, recognizing the petitioner's mental impairment, referred the petitioner to Welsh for psychological evaluation on more than one occasion and also called Welsh as a witness on behalf of the petitioner. The habeas court found that in regard to the June, 2002 hearing to determine whether another competency evaluation should be ordered, "although [Schipul] personally saw no basis to relitigate the issue of competency, he raised it in the interests of justice and out of an abundance of caution." The habeas court proceeded to find that "Schipul's performance was exemplary in that he renewed the issue of competence in June, 2002, in the interests of justice even though he did not see a strong basis to question competency at that point."[3] All of the court's factual findings regarding Schipul's performance are supported by the record.

After considering the parties' written and oral arguments to this court, and our own review of the record and transcript, we conclude that there is no indication in the record that Schipul's performance was deficient; to the contrary, all indications are that he provided the petitioner with a careful and competent defense. Because the petitioner has failed to satisfy the first prong of the *Strickland* test for ineffective assistance of counsel, we need not analyze whether counsel's performance unfairly prejudiced the petitioner. In sum, we conclude that the petitioner has failed to demonstrate that the habeas court abused its discretion in denying

[2] During the petitioner's habeas trial, Schipul testified that he has been a full-time public defender with the public defender office in Bridgeport since 1982 and has tried more than seventy-five criminal cases to verdict and has been involved with "hundreds" of cases that have been disposed of by plea agreement.

[3] Schipul testified that although Welsh's findings in April and June, 2002, had "surprised" him, he raised the issue with the court again because he "wanted to give [the petitioner] the benefit of the doubt."

certification to appeal as to the claim of ineffective assistance of trial counsel.[4]

The appeal is dismissed.

In this opinion the other judges concurred.

[4] The petitioner also claims that, his ineffective assistance of counsel claim aside, the petition for a writ of habeas corpus should be granted because he "was convicted and sentenced while he was incompetent" and that this amounts to a constitutional violation. We agree with the petitioner that the trial court could not have accepted the guilty plea of a person who is legally incompetent. *State* v. *Gonzalez*, supra, 205 Conn. 686. The petitioner, however, was first given a full and fair opportunity to litigate the subject of his competency before the trial court. He then had a second opportunity to litigate this issue before the habeas court, in which the court permitted him to present new evidence that was unavailable to the trial court. This claim is not distinguished by the appellant in any way from the claims addressed and decided in this opinion.