KENNETH B. PORTER *v.* COMMISSIONER
OF CORRECTION
(AC 29936)

Gruendel, Robinson and Alvord, Js.

Argued February 2—officially released April 13, 2010

*Michael D. Day*, for the appellant (petitioner).

*Rita M. Shair*, senior assistant state's attorney, with whom were *John A. Connelly*, state's attorney, and, on the brief, *Catherine Brannelly Austin*, senior assistant state's attorney, for the appellee (respondent).

*Opinion*

ROBINSON, J. The petitioner, Kenneth B. Porter, appeals from the judgment of the habeas court denying his petition for a writ of habeas corpus. Following the court's denial of his petition for certification to appeal, the petitioner appealed, claiming that the court (1) abused its discretion by denying his petition for certification to appeal and (2) improperly concluded that he was not denied the effective assistance of trial counsel. We dismiss the appeal.

The following facts, which the jury reasonably could have found at the petitioner's criminal trial, are relevant to the petitioner's allegations of ineffective assistance of trial counsel. "On December 2, 2000, Richard Sutphin was driving a public utilities truck on Cooke Street in

Waterbury. Sutphin was forced to stop the truck at the intersection of Cooke Street and Buckingham Street because the [petitioner] was in the roadway, pushing a car. When the car that [he] was pushing was driven away, the [petitioner] approached the front of Sutphin's truck. Upon reaching the truck, the [petitioner] began to yell, pull his hair out, and wildly strike the truck with his fists and head. [He] continued that behavior for approximately fifteen minutes. During that time, Sutphin radioed for police assistance, left the truck and ran toward an approaching police car that was driven by Sergeant Paul Ezzo of the Waterbury police department.

"At that time, the [petitioner], seeing an approaching vehicle driven by Andelino Vilar, turned away from the truck and jumped on to the hood of Vilar's car. The [petitioner] began to strike the car. During the attack, the [petitioner] reached through an open window, grabbed Vilar's sweater and attempted to pull Vilar out of the vehicle.

"Ezzo approached the [petitioner] and informed him that he was placing him under arrest. The [petitioner] began to swing, kick and bite at Ezzo. Ezzo, Sutphin and Ted Peil, a private citizen, attempted to restrain the [petitioner]. While wrestling the [petitioner] to the ground, Ezzo called for additional police assistance and was repeatedly struck by the [petitioner]. Ezzo sprayed the [petitioner] with Mace. The Mace had little or no effect on the [petitioner]. When additional police support arrived, it eventually took seven officers approximately thirty minutes to subdue and to place the [petitioner] under arrest." *State* v. *Porter*, 76 Conn. App. 477, 480–81, 819 A.2d 909, cert. denied, 264 Conn. 910, 826 A.2d 181 (2003).

As a result of the incident, the petitioner was charged with numerous crimes. After a trial at which the petitioner represented himself with the assistance of

standby counsel,[1] the jury found him guilty of one count of assault of public safety personnel in violation of General Statutes § 53a-167c (a), one count of interfering with an officer in violation of General Statutes (Rev. to 1999) § 53a-167a (a) and two counts of breach of the peace in violation of General Statutes (Rev. to 1999) § 53a-181 (a) (1) and (2). Id., 479. The court, *Cofield, J.*, gave the petitioner a total effective sentence of ten years to serve in prison and ten years of special parole.[2] The petitioner appealed. On appeal, this court reversed the petitioner's conviction, in part, and remanded the case "with direction to combine the conviction of interfering with an officer with the conviction of assault of public safety personnel and to vacate the sentence on the conviction of interfering with an officer." Id., 502. The judgment was affirmed in all other respects.[3] Id.

In August, 2005, the self-represented petitioner filed the petition for a writ of habeas corpus that is at issue in this appeal. Appointed counsel filed a second amended petition, alleging, in relevant part, that the petitioner had been denied the effective assistance of trial counsel in that, *prior to trial*, attorney Rosemary Montesi failed to (1) file a notice of intent to assert a defense of mental disease or defect pursuant to Practice Book § 40-17,[4]

---

[1] On or about December 5, 2000, attorney Rosemary Montesi was appointed to represent the petitioner. On October 11, 2001, the court, *Damiani, J.*, granted the petitioner's motion to dismiss Montesi but appointed her standby counsel. Judge Damiani had denied the petitioner's previous motion to dismiss counsel.

[2] The petitioner pleaded guilty to being a persistent serious felony offender pursuant to General Statutes § 53a-40 (c), as alleged in a part B information.

[3] The petitioner filed an earlier petition for a writ of habeas corpus, alleging that he had been denied the effective assistance of appellate counsel. His petition was denied by the habeas court, *Hon. John Ottaviano, Jr.*, judge trial referee, and this court dismissed the petitioner's appeal. *Porter* v. *Commissioner of Correction*, 99 Conn. App. 77, 912 A.2d 533, appeal dismissed, 284 Conn. 431, 934 A.2d 242 (2007).

[4] Practice Book § 40-17 provides: "If a defendant intends to rely upon the affirmative defense of mental disease or defect or of extreme emotional disturbance at the time of the alleged crime, the defendant shall, not later than forty-five days after the first pretrial conference in the court where

(2) secure defense witnesses to testify at trial, (3) have the petitioner evaluated for treatment under the Connecticut alcohol and drug abuse commission (commission), (4) investigate adequately the factual basis or evidence to support the issues claimed and (5) represent the petitioner within the range of competency demonstrated by lawyers of ordinary training and skill in criminal law. The petitioner also alleged that, but for counsel's errors and omissions, the jury's verdict would have been different. Following trial, the court denied the petition for a writ of habeas corpus and denied the petition for certification to appeal.

In his appeal, the petitioner claims that the court abused its discretion by failing to grant his petition for certification to appeal with respect to his claim that Montesi's representation was ineffective because she failed to file a notice of the affirmative defense of mental disease or defect. "In a habeas appeal, although this court cannot disturb the underlying facts found by the habeas court unless they are clearly erroneous, our review of whether the facts as found by the habeas court constituted a violation of the petitioner's constitutional right to effective assistance of counsel is plenary. . . . Faced with a habeas court's denial of a petition for certification to appeal, a petitioner can obtain appellate review of the dismissal of his petition for habeas corpus only by satisfying the two-pronged test enunciated by our Supreme Court in *Simms* v. *Warden*, 229 Conn. 178, 640 A.2d 601 (1994), and adopted in *Simms* v. *Warden*, 230 Conn. 608, 612, 646 A.2d 126 (1994). First, he must demonstrate that the denial of his petition for

the case will be tried or at such later time as the judicial authority may direct, notify the prosecuting authority in writing of such intention and file a copy of such notice with the clerk. If there is a failure to comply with the requirements of this rule, such affirmative defenses may not be raised. The judicial authority may for cause shown allow late filing of the notice or grant additional time to the parties to prepare for trial or make such other order as may be appropriate."

certification constituted an abuse of discretion. . . .
Second, if the petitioner can show an abuse of discretion, he must then prove that the decision of the habeas court should be reversed on its merits. . . .

"To prove an abuse of discretion, the petitioner must demonstrate that the [resolution of the underlying claim involves issues that] are debatable among jurists of reason; that a court could resolve the issues [in a different manner]; or that the questions are adequate to deserve encouragement to proceed further. . . . For the petitioner to prevail on his claim of ineffective assistance of counsel, he must establish both that his counsel's performance was deficient and that there is a reasonable probability that, but for the counsel's mistakes, the result of the proceeding would have been different." (Internal quotation marks omitted.) *Francis D.* v. *Commissioner of Correction*, 118 Conn. App. 350, 352–53, 983 A.2d 70 (2009), cert. denied, 294 Conn. 930, 986 A.2d 1056 (2010).

The habeas court made the following relevant findings of fact following trial. Both the petitioner and Montesi testified. The court found Montesi to be highly credible and the petitioner generally not credible. After she was appointed to represent the petitioner,[5] Montesi met with the petitioner, who told her that at the time of the incident, he was upset because his wife, who was pregnant, had gone to meet her former husband. The petitioner was praying in the middle of the street and "had an aura about him which was demonic." He also told Montesi that he remembered Vilar's car approaching the intersection but denied attempting to pull Vilar out of his car. Montesi found the petitioner's actions on December 2, 2000, to be "bizarre" and took numerous steps to explore issues related to the petitioner's competency to stand trial, the existence of a defense

---

[5] At the habeas trial, the petitioner testified that at the time he was arraigned on December 5, 2000, he requested that Montesi represent him.

of mental disease or defect and the likelihood that the use of drugs had affected the petitioner's behavior at the time of the incident.

In Montesi's opinion, the petitioner was competent to stand trial: he understood the charges against him, was able to recall the events surrounding the crime and was able to assist in his defense. Each time she and the petitioner discussed the facts, the petitioner's report was lucid and clear. In an effort to obtain a second opinion regarding the petitioner's competency, Montesi asked Julie King and Audrey Bennet, licensed clinical social workers in the public defender's office, to interview the petitioner. King and Bennet also believed that the petitioner was competent. Montesi, therefore, never filed a motion for an evaluation to determine the petitioner's competency to stand trial.

On several occasions, Montesi explored with the petitioner whether drug or alcohol use had affected his behavior at the time of the incident. Montesi knew that the petitioner resided at Connecticut Renaissance House[6] in July, 2000, and that he occasionally used marijuana. Montesi, therefore, asked the petitioner if he was interested in a substance abuse program. The petitioner informed Montesi that he did not want such a program, as it would be a "setup" for failure. When Montesi asked the petitioner directly whether he was under the influence of drugs or alcohol at the time of the incident, he "vehemently denied" the use of drugs or alcohol. Moreover, Montesi testified that the petitioner's December 4, 2000 medical records from St. Mary's Hospital do not indicate the presence of drugs or alcohol.[7] Consequently, Montesi and the petitioner never

[6] Connecticut Renaissance, Inc., is a nonprofit multiservice agency that provides mental health, substance abuse and community release services.

[7] At the habeas trial, the petitioner testified that the subject incident occurred on a Saturday and that he spent the weekend in jail. When he appeared in court on Monday, Judge Damiani ordered that he be taken to the hospital for treatment of his injuries.

discussed the filing of a motion for substance abuse evaluation pursuant to General Statutes § 17a-693.[8]

Montesi also explored the possibility of an affirmative defense of mental disease or defect pursuant to General Statutes § 53a-13.[9] Through the office of the public defender, Montesi requested that Kenneth M. Selig, a forensic psychiatrist, interview the petitioner and evaluate him for competency, mental disease or defect and intoxication.[10] Montesi sent Selig a copy of the police reports, records from the petitioner's hospitalization at St. Mary's Hospital and Connecticut Renaissance, Inc. Selig interviewed the petitioner on September 22, 2001, and reported to Montesi that there was no evidence of the petitioner's involuntary intoxication at the time of the incident. In Selig's opinion, the petitioner was competent to stand trial, but Selig could not conclude that the petitioner was incapable of forming the specific intent for the crimes with which he was charged. Selig could not rule out that the petitioner had been under

---

[8] General Statutes § 17a-693 provides in relevant part: "The court, on its own motion or on motion of the state's attorney or a person charged with a crime or convicted of a crime but not yet sentenced, may order, if the interests of justice will be served, that such person be examined, pursuant to the provisions of section 17a-694, to determine if the person is alcohol-dependent or drug-dependent and eligible for treatment under section 17a-696 or 17a-699. . . ."

[9] General Statutes § 53a-13 provides in relevant part: "(a) In any prosecution for an offense, it shall be an affirmative defense that the defendant, at the time he committed the proscribed act or acts, lacked substantial capacity, as a result of mental disease or defect, either to appreciate the wrongfulness of his conduct or to control his conduct within the requirements of the law.

"(b) It shall not be a defense under this section if such mental disease or defect was proximately caused by the voluntary ingestion, inhalation or injection of intoxicating liquor or any drug or substance, or any combination thereof, unless such drug was prescribed for the defendant by a prescribing practitioner . . . ."

[10] Montesi testified that she asked Selig to examine the petitioner to determine whether the petitioner "was capable of forming the specific intent of the crime of assault on a police officer. And in addition to that whether or not he was under the influence of drugs at the time and whether or not he was competent."

the influence at the time of the incident because the petitioner had smoked marijuana the week before.[11] Montesi shared Selig's opinion with the petitioner, who responded that was "fine." The petitioner denied to Montesi that he had a mental disease or defect and claimed that he was "just praying" at the time of the incident.

Montesi was appointed standby counsel for the petitioner after the court, *Damiani, J.*, granted the petitioner's motion to dismiss her. Montesi was in the courtroom throughout the entire trial, but the petitioner never sought her advice or asked her a question until the jury returned its guilty verdict on the part A information.[12] The habeas court found it noteworthy that after the close of the state's case-in-chief, when the prosecutor filed a motion in limine to preclude evidence of mental disease or defect, the petitioner did not consult with Montesi.

At the habeas trial, the petitioner testified that he did not discuss drug treatment with Montesi and that the incident was not drug induced. The petitioner met with Selig for about one hour in September, 2001. Selig informed the petitioner that the petitioner "seem[ed] competent" and that he had no "recommendations" for the petitioner. The petitioner also acknowledged that he met with King and Bennet to discuss his mental health history. As the result of a disagreement the petitioner had with Montesi in July, 2001, he filed a motion to dismiss her as his counsel.[13] See footnote 1 of this opinion.

---

[11] See General Statutes § 53a-13 (b) in footnote 9 of this opinion.

[12] Following the jury's verdict of guilty, the petitioner consulted with Montesi as to whether he should plead guilty to the part B information.

[13] In his motion to dismiss Montesi filed on August 1, 2001, the petitioner did not mention an affirmative defense of mental disease or defect.

The criminal trial record discloses that from October 12, 2001, to January 2, 2002, the petitioner, self-represented, filed eleven pretrial and trial motions.[14] At the habeas trial, the petitioner recalled that the state filed a motion in limine to preclude evidence of mental disease or defect, and claimed that that was the "first time [he] had heard of this type of defense" and that he "was not aware of the affirmative defense of mental disease or defect."[15] Later, he testified that he had "raised the [issue of] mental disease or defect" with Montesi, who informed him that such a defense could not be used as an affirmative defense.

In adjudicating the allegations of the petitioner's second amended petition for a writ of habeas corpus, the court noted that ineffective assistance of counsel claims are not available to a petitioner who elects to proceed as a self-represented party. See *State* v. *Oliphant*, 47 Conn. App. 271, 281, 702 A.2d 1206 (1997), cert. denied, 244 Conn. 904, 714 A.2d 3 (1998). Here, however, the petitioner's claims concern counsel's representation *prior to* the time the petitioner was permitted to represent himself, and are thus amenable to a claim of ineffective assistance. See *State* v. *Gethers*, 193 Conn. 526,

---

[14] The petitioner himself filed the following motions, among others: a motion for a speedy trial, a motion for severance, a motion to appoint an investigator, a motion for a bill of particulars, a motion to exclude evidence of prior criminal history and acts of misconduct, a motion to reconsider, a motion to dismiss on the ground of insufficient evidence and a motion for a judgment of acquittal.

[15] The habeas court quoted from the transcript of the petitioner's criminal trial. During the hearing on the motion in limine, the petitioner never told the court that he was hearing of the defense of mental disease or defect for the first time and did not oppose the state's motion in limine. When Judge Cofield asked the petitioner if he was trying to present a defense of mental disease or defect, the petitioner responded: "Well, no, not actually, Your Honor, although the fact is that there was some mental incapacity. It was—no, that's not it at all, I—my—my actual objective is to show and prove the lack of evidence of the state's case." And later the petitioner told the court, "there was an interview with a doctor—I guess a Dr. [Selig], and his conclusion was that I was mentally competent."

541, 480 A.2d 435 (1984). In adjudicating the allegation that Montesi rendered ineffective assistance to the petitioner at his criminal trial, the court applied the standard established in *Strickland* v. *Washington*, 466 U.S. 668, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984).

Under *Strickland*, "[t]o prevail on a claim of ineffective assistance of counsel, a petitioner must show that (1) counsel's performance was deficient and (2) the deficient performance prejudiced the defense. . . . The first prong is satisfied by proving that counsel made errors so serious that he was not functioning as the counsel guaranteed by the sixth amendment. The second prong is satisfied if it is demonstrated that there exists a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. . . . Unless a [petitioner] makes both showings, it cannot be said that the conviction . . . resulted from a breakdown in the adversary process that renders the result unreliable. Because both prongs . . . must be established for a habeas petitioner to prevail, a court may dismiss a petitioner's claim if he fails to meet either prong." (Citations omitted; internal quotation marks omitted.) *Gibson* v. *Commissioner of Correction*, 118 Conn. App. 863, 873–74, 986 A.2d 303 (2010).

In this case, the petitioner alleged, in part, that Montesi rendered ineffective assistance by failing to file a notice of intent to rely on the defense of mental disease or defect *prior to* trial. The court found that the petitioner's claim failed for several reasons. Although the petitioner repeatedly denied to Montesi that he had a mental disease or defect, she had Selig perform a psychiatric evaluation. Selig determined, on the basis of his interview with the petitioner and the records available to him, that he could not conclude that at the time of the alleged crimes the petitioner was unable to form the requisite intent to commit them. On the basis of Selig's

evaluation and the petitioner's denial of having a mental disease or defect, Montesi reasonably concluded that the affirmative defense of mental disease or defect was unavailing. The court, therefore, concluded that the petitioner's claim failed to satisfy the first prong of *Strickland.*

The court also concluded that the petitioner's claim failed to satisfy the prejudice prong of *Strickland.* There were three weeks between the time the petitioner was given permission to represent himself and the commencement of trial. During that time, the petitioner never filed a Practice Book § 40-17 motion on his own behalf. The court reasoned that Practice Book § 40-17 provides in relevant part that a defendant file a notice not later than "forty-five days after the first pretrial conference in the court where the case will be tried . . . *or at such later time as the judicial authority may direct* . . . ." (Emphasis added.) The judicial authority is granted discretion for good cause shown to permit the late filing of a notice or to grant additional time to the parties to prepare for trial. *State* v. *Porter,* supra, 76 Conn. App. 487 n.11.[16] The court concluded that, if the petitioner truly wanted to proceed on a mental disease or defect defense, he at least should have attempted to file a notice himself. Moreover, the petitioner informed Judge Cofield that he did not intend to put forth a mental disease or defect defense. *If* Montesi had rendered ineffective assistance by failing to file notice of a mental disease or defect defense, the deficient performance was vitiated by the fact that the petitioner did not want to proceed on that theory of defense.

On the basis of our review of the record, we conclude that the habeas court did not abuse its discretion by denying the petitioner's petition for certification to

---

[16] In his direct appeal, the petitioner raised the claim that there was insufficient evidence to prove that he "was capable of forming the requisite intent based upon a mental defect . . . ." *State* v. *Porter,* supra, 76 Conn.

appeal. We agree with the reasoning of the court that the petitioner's claim fails under both prongs of *Strickland* and that the issue is not debatable among jurists of reason, that the court could not resolve the issue in a different manner and that the question involved does not deserve encouragement to proceed further.

The record demonstrates that Montesi's decision not to assert a mental disease or defect defense was a matter of trial strategy predicated on discussions she had with the petitioner, Selig's expert opinion and the opinions of King and Bennet. "To satisfy the first prong of *Strickland,* the petitioner must . . . overcome the presumption that alleged ineffective assistance was not the result of sound trial strategy." (Internal quotation marks omitted.) *Beverly* v. *Commissioner of Correction,* 101 Conn. App. 248, 252, 922 A.2d 178, cert. denied, 283 Conn. 907, 927 A.2d 916 (2007). Other than the petitioner's bizarre behavior at the time he committed the crimes, Montesi had no evidence that the petitioner suffered from a mental disease or defect and thus no basis on which to found such an affirmative defense.[17]

In his brief on appeal, the petitioner argues that the habeas court improperly found that he failed to show that Montesi's "performance was deficient and prejudiced him when [she] failed to timely file a notice of intent to rely upon the affirmative defense of mental disease or defect *or* of extreme emotional disturbance at the time of the crime." (Emphasis added.) The affirmative defenses of mental disease or defect and

---

App. 487 n.11. This court did not review the claim because the petitioner failed to file a notice of the affirmative defense of mental disease or defect. Id.

[17] "The affirmative defense of mental disease or defect, otherwise known as the insanity defense, is codified in General Statutes § 53a-13. . . . This defense has both a cognitive and a volitional prong. *State* v. *Wilson,* [242 Conn. 605, 613, 700 A.2d 633 (1997).] Under the cognitive prong [of the insanity defense], a person is considered legally insane if, as a result of mental disease or defect, he lacks substantial capacity . . . to appreciate the . . . [wrongfulness] of his conduct. . . . Under the volitional prong, a person also would be considered legally insane if he lacks substantial capac-

extreme emotional disturbance are separate defenses, which are mutually exclusive.[18] In his second amended petition, the petitioner alleged nothing having to do with extreme emotional disturbance. We therefore will not consider that argument. See *Johnson* v. *Commissioner of Correction*, 288 Conn. 53, 59, 951 A.2d 520 (2008) (review limited to matters in record). As to his argument that Montesi might have proved his mental disease or defect by way of lay testimony, the argument misses the point. The petitioner's claim is that *prior to* trial, Montesi failed to file notice of the affirmative defense. As we previously discussed, that was a matter of trial strategy, not trial performance, which is the factual predicate of the petitioner's argument. Moreover, when he represented himself, the petitioner stated that he had no intention and made no effort to present an affirmative defense of mental disease or defect, so there was no need for notice of the same.

The appeal is dismissed.

In this opinion the other judges concurred.

---

ity . . . to conform his conduct to the requirements of law." (Citations omitted; internal quotation marks omitted.) *State* v. *Madigosky*, 291 Conn. 28, 39, 966 A.2d 730 (2009).

[18] See *State* v. *Madigosky*, 291 Conn. 28, 39–40, 966 A.2d 730 (2009) (differentiating affirmative defenses of mental disease and defect and extreme emotional disturbance).