## MASHAWN GREENE *v.* COMMISSIONER OF CORRECTION
### (AC 30661)

Bishop, Gruendel and Schaller, Js.

122

Argued April 13—officially released August 10, 2010

*Laurie A. Sullivan*, special public defender, with whom was *Moira L. Buckley*, for the appellant (petitioner).

*Timothy J. Sugrue*, assistant state's attorney, with whom, on the brief, were *Michael Dearington*, state's

attorney, and *Linda N. Howe,* former senior assistant state's attorney, for the appellee (respondent).

GRUENDEL, J. This habeas appeal involves the distinction between ineffective assistance of counsel claims concerning guilty verdicts and guilty pleas. The petitioner, Mashawn Greene, appeals from the judgment of the habeas court following its denial of his petition for certification to appeal from the denial of his amended petition for a writ of habeas corpus. On appeal, he claims that the court improperly found that he was not denied the effective assistance of counsel as it relates to his (1) guilty verdict and (2) guilty pleas. We dismiss in part and reverse in part the judgment of the trial court.

The following facts and procedural history, taken from the decisions of our Supreme Court and the habeas court, are relevant to our discussion. "On the evening of October 10, 2001, the [petitioner] purchased the following stolen firearms [from Felipe Garcia]: a Smith & Wesson Daniels Cobray M-11 nine millimeter submachine gun (Cobray M-11); a Braco Arms .38 caliber pistol; and a Mossberg 500A shotgun. At the same time, the [petitioner] purchased stolen ammunition for the Cobray M-11 consisting of eight full thirty-five round magazines loaded with nine millimeter Luger Subsonic bullets. A Cobray M-11 is a semiautomatic or automatic assault weapon capable of emptying a thirty-five round magazine in under two seconds.

"On October 12, 2001, the [petitioner and four men] learned that individuals from the area of New Haven known as 'the Tre' were planning to 'shoot up' the area of New Haven known as 'West Hills' in retaliation for a shooting that had occurred the night before. The Tre area includes Elm Street and Orchard Street and the

West Hills area includes the McConaughy Terrace projects. Rather than wait for the retaliation, the [petitioner and four men] decided to 'go through the Tre first.'

"[The petitioner and four men] . . . drove to the Tre. After they saw a group of people on the corner of Edgewood Avenue and Orchard Street, [they exited] the car . . . walked to the corner of Orchard Street and Edgewood Avenue, opened fire on the people on the street corner, then ran back to the [car] and fled the scene. Six people were shot and one of the victims died from his wounds. The victims had no connection to the shooting that had occurred the evening before and were targeted merely because of their presence in the Tre area." *State* v. *Greene*, 274 Conn. 134, 139–40, 874 A.2d 750 (2005), cert. denied, 548 U.S. 926, 126 S. Ct. 2981, 165 L. Ed. 2d 988 (2006). Police later apprehended the petitioner and the other four men.

The petitioner subsequently was charged with murder as an accessory in violation of General Statutes §§ 53a-54a and 53a-8; conspiracy to commit murder in violation of General Statutes §§ 53a-54a and 53a-48; five counts of assault in the first degree as an accessory in violation of General Statutes §§ 53a-59 (a) (5) and 53a-8; possession of an assault weapon in violation of General Statutes § 53-202c; and three counts of theft of a firearm in violation of General Statutes § 53a-212 (a). On January 25, 2002, the petitioner pleaded not guilty to all charges. The petitioner was represented by attorney Paul Carty.

"After discussing the facts about both incidents with the petitioner and with the state's attorney . . . it became apparent that the state intended to use the testimony of three of the other four codefendants to show that it was the petitioner who shot a Cobray M-11 . . . the same type of gun he had purchased two

days earlier . . . into a crowd on the evening of October 12, 2001. Mr. Carty then advised his client that it would be in his best interest to plead guilty to the theft of weapons charges in order to prevent those charges from going to the jury. He explained to him that if he were tried on those charges as well, the jury might infer that [the] petitioner was indeed the shooter at the October 12 incident and convict him of murder. Further, [the prosecutor] had represented that he would not use the pleas in the later trial. [The] [p]etitioner then pleaded guilty to the theft of weapons charges.

"On July 8, 2003, after all the state's witnesses had testified, the state's attorney attempted to have admitted the transcript of [the] petitioner's guilty pleas dated June 3, 2003, which was the subject of Mr. Carty's motion in limine. When it appeared that the trial judge, *Thompson, J.*, might overrule Mr. Carty's motion because he felt that the evidence of the guilty pleas was relevant, Mr. Carty suggested that a stipulation, rather than the transcript itself be entered. He reasoned that a 'sanitized' version of the evidence of the pleas going to the jury would make it less likely that the jury would conclude that any one of those particular guns purchased by the petitioner had been used by him in the shooting of October 12. The state's attorney agreed to enter a stipulation to that effect after which a written stipulation was submitted to the trial court with the input of both counsel."

Thereafter, the petitioner was convicted of manslaughter in the first degree with a firearm as an accessory in violation of General Statutes §§ 53a-8 (a) and 53a-55a, conspiracy to commit manslaughter in the first degree with a firearm in violation of §§ 53a-48 and 53a-55a, five counts of assault in the first degree as an accessory in violation of §§ 53a-8 (a) and 53a-59 (a) (5), conspiracy to commit assault in the first degree in violation of §§ 53a-48 (a) and 53a-59 (a) (5), and

possession of an assault weapon in violation of § 53-202c. *State* v. *Greene*, supra, 274 Conn. 136–37. The court sentenced the petitioner on those charges, and the three counts of theft of a firearm to which he had pleaded guilty, to sixty-five years incarceration. Subsequently, the petitioner appealed from that judgment.[1] Our Supreme Court reversed the judgment of conviction of manslaughter in the first degree with a firearm as an accessory and remanded the case with direction to modify the judgment to reflect a conviction of manslaughter in the first degree as an accessory in violation of General Statutes §§ 53a-8 (a) and 53a-55 (a) (1). Id., 174. The Supreme Court also reversed the judgment of conviction of conspiracy to commit manslaughter in the first degree with a firearm and remanded the case with direction to render judgment of acquittal on that charge. Id. The judgment was affirmed in all other respects; id.; and the petitioner was resentenced to a total effective term of sixty years imprisonment.

The petitioner thereafter brought a petition for a writ of habeas corpus in which he alleged that he was denied the effective assistance of trial counsel in violation of the sixth and fourteenth amendments to the United States constitution and article first, § 8, of the Connecticut constitution. The habeas court denied the petitioner's claim. The petitioner next filed a petition for certification to appeal from the judgment of the habeas court, which the habeas court also denied. This appeal followed.

We first set forth the applicable standard of review and legal principles that govern our analysis. "When confronted with a denial of certification to appeal, we must determine whether this ruling constituted an abuse of discretion. . . . A petitioner satisfies that substantial burden by demonstrating that the issues are

---

[1] The petitioner was represented by attorney Mark Rademacher in his appeal and second sentencing hearing.

debatable among jurists of reason; that a court could resolve the issues [in a different manner]; or that the questions are adequate to deserve encouragement to proceed further. . . . If the petitioner can show that the habeas court abused its discretion in denying the petition for certification to appeal, then the petitioner must demonstrate that the judgment of the habeas court should be reversed on its merits. . . . To determine whether the court abused its discretion, we must consider the merits of the petitioner's underlying claims." (Citations omitted; internal quotation marks omitted.) *Reeves* v. *Commissioner of Correction*, 119 Conn. App. 852, 858, 989 A.2d 654, cert. denied, 296 Conn. 906, 992 A.2d 1135 (2010).

"A habeas petitioner can prevail on a constitutional claim of ineffective assistance of counsel [only if he can] establish both (1) deficient performance, and (2) actual prejudice. . . . For ineffectiveness claims resulting from guilty verdicts, we apply the two-pronged standard set forth in *Strickland* v. *Washington*, 466 U.S. 668, 687, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984) . . . . For ineffectiveness claims resulting from guilty pleas, we apply the standard set forth in *Hill* v. *Lockhart*, 474 U.S. 52, 59, 106 S. Ct. 366, 88 L. Ed. 2d 203 (1985), which modified *Strickland*'s prejudice prong. . . .

"To satisfy the performance prong, the petitioner must show that counsel's representation fell below an objective standard of reasonableness. . . . A petitioner who accepts counsel's advice to plead guilty has the burden of demonstrating on habeas appeal that the advice was not within the range of competence demanded of attorneys in criminal cases. . . . The range of competence demanded is reasonably competent, or within the range of competence displayed by lawyers with ordinary training and skill in the criminal law. . . . Reasonably competent attorneys may advise their clients to plead guilty even if defenses may exist.

. . . A reviewing court must view counsel's conduct with a strong presumption that it falls within the wide range of reasonable professional assistance." (Citation omitted; internal quotation marks omitted.) *Ryan* v. *Commissioner of Correction*, 114 Conn. App. 331, 334–35, 969 A.2d 221, cert. denied, 292 Conn. 910, 973 A.2d 108 (2009).

To satisfy the prejudice prong for ineffective assistance claims resulting from guilty verdicts, the petitioner must demonstrate that "there exists a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." (Internal quotation marks omitted.) *Porter* v. *Commissioner of Correction*, 120 Conn. App. 437, 447, 991 A.2d 720 (2010). To satisfy the prejudice prong for ineffective assistance claims resulting from guilty pleas, "the evidence must demonstrate that there is a reasonable probability that, but for counsel's errors, [the petitioner] would not have pleaded guilty and would have insisted on going to trial. . . . A reasonable probability is one [that] is sufficient to undermine confidence in the result." (Citation omitted; internal quotation marks omitted.) *Borrelli* v. *Commissioner of Correction*, 113 Conn. App. 805, 810, 968 A.2d 439 (2009). With these principles in mind, we now address the petitioner's claims.

I

We first review the petitioner's ineffective assistance claim relating to the guilty verdict. The petitioner claims that the court improperly found that he was not denied the effective assistance of counsel as it relates to the guilty verdict. We disagree.

We recite the following findings of the habeas court in denying the petitioner certification to appeal. "When faced with the potential of the earlier guilty pleas going before the jury, [Carty] properly filed a motion in limine

to preclude their admission. Only after it became apparent that the court was going to deny his motion did he then propose the 'sanitized' stipulation being entered to minimize the prejudice to his client, since the effect of not stipulating would be to allow a more damaging full transcript of the plea hearings in as evidence.

"On the other hand, there was also no mention in [Carty's] oral argument or motion in limine of the state's assurance that the pleas would not be used at trial. If there indeed was an off-the-record promise by the state . . . Carty could have raised a *Santobello* claim[2] in his motion in limine. . . . Although such claims typically involve recommended sentences, the same considerations apply where the quid pro quo is that the pleas will not be used in a subsequent trial. . . . Carty provided no explanation for why this was not argued at trial. Although an attorney's tactical decisions are given great deference, the failure to raise this issue before the trial court is objectively unreasonable given that the *only* justification for the guilty pleas was the state's promise to not introduce them at trial. Thus, the failure to inform the court of the agreement, which would have effectively precluded its entry if proven, renders his performance in this regard deficient." (Citations omitted; emphasis in original.)

Regarding prejudice, the court made the following comments: "[T]he petitioner has failed to demonstrate prejudice. While certainly relevant to the petitioner's identity and means to commit the crimes for which he was tried, the fact that he purchased the guns two days before was not the nail in the coffin that led to his conviction. Indeed, as defense counsel ably pointed out in his closing argument, the fact that he purchased

---

[2] See *Santobello* v. *New York*, 404 U.S. 257, 262, 92 S. Ct. 495, 30 L. Ed. 2d 427 (1971) ("when a plea rests in any significant degree on a promise or agreement of the prosecutor, so that it can be said to be part of the inducement or consideration, such promise must be fulfilled").

stolen guns only proved his possession of them on the date of purchase. In order to convict him of manslaughter and assault, the jury would have had to credit the testimony of the petitioner's codefendants in conjunction with the state's DNA and ballistics evidence to have placed the petitioner at the scene of the crime and having fired the Cobray submachine gun. Even absent the guilty pleas, there was sufficient evidence for the jury to have found the petitioner guilty of the crimes. Conclusive samples of his DNA were found on a T-shirt and sweatshirt located in the getaway car; the only shirt to have gunpowder residue on it. However suspect the petitioner's coconspirators' testimony may have been, their reconstruction of the events surrounding the shootings was largely consistent with each others' [testimony] and was in harmony with the physical evidence. In short, the petitioner had failed to show that, had he not pleaded guilty to the charges of theft of a firearm, he would not have been convicted at trial of these charges. Therefore, he has failed to meet the prejudice prong of *Strickland* because he has not undermined this court's confidence in the outcome of the proceedings."

On appeal, the petitioner claims that although the court properly found that Carty's performance at trial was deficient, it improperly found that the petitioner was not prejudiced by that deficient performance. Specifically, the petitioner contends that he was prejudiced because there is a reasonable probability that, but for Carty's deficient performance, the outcome of the trial would have been different. More specifically, the petitioner asserts that the habeas court failed to consider properly the impact that Carty's deficiencies had on the other evidence, namely, by making credible the testimony of Garcia, who stated that he had sold the Cobray M-11 to the petitioner, and that of the three codefendants, who claimed that the petitioner operated

the Cobray M-11 on the date of the incident. According to the petitioner, without evidence of the pleas, their statements would otherwise have been impeachable.

Initially, we note that because the petitioner's ineffective assistance claim involves his guilty verdict, we apply *Strickland*'s two-pronged standard. That is, we must determine whether (1) counsel's representation fell below an objective standard of reasonableness and (2) there exists a reasonable probability that, but for counsel's deficient performance, the result of the trial would have been different. See *Porter* v. *Commissioner of Correction*, supra, 120 Conn. App. 447.

We agree with the habeas court that Carty's performance fell below an objective standard of reasonableness. Although Carty reasonably filed a motion in limine to preclude evidence of the petitioner's guilty pleas, he unreasonably failed to inform the court of the state's alleged promise that it would not present evidence of those pleas at trial. If such a promise was, in fact, made by the state, as Carty had informed the petitioner, Carty was obligated to bring this to the court's attention. His failure to do so renders his performance deficient.

We next consider whether Carty's deficient performance prejudiced the petitioner. On our review of the record, we are convinced that it did not. The petitioner's assertion that evidence of the pleas made credible the testimony of Garcia and three codefendants is mere speculation that does not equate to prejudice. See *Williams* v. *Commissioner of Correction*, 120 Conn. App. 412, 427, 991 A.2d 705 (2010); see also *Crawford* v. *Commissioner of Correction*, 285 Conn. 585, 599, 940 A.2d 789 (2008) ("[i]n a habeas corpus proceeding, the petitioner's burden of proving that a fundamental unfairness had been done is not met by speculation . . . but by demonstrable realities"); *Narumanchi* v. *DeStefano*, 89 Conn. App. 807, 815, 875 A.2d 71 (2005)

("[s]peculation and conjecture have no place in appellate review").

Furthermore, evidence of the pleas had little effect, if any, on the three codefendants' credibility. The codefendants testified that the petitioner operated the Cobray M-11 during the shootings on October 12, 2001. Evidence of the pleas did not affect the petitioner's argument that he was not a part of the shootings— they proved only that he possessed the Cobray M-11 on October 10, 2001. As such, any credibility issues there may have been with the codefendants concerning their testimony that the petitioner operated the Cobray M-11 during the shootings remained.

In addition to the codefendants' testimony, other evidence linked the petitioner to the shootings. There was evidence that one codefendant's car was used to transport the shooters to and from the scene of the crime. From the trunk of that car, the police recovered a T-shirt containing the DNA of the petitioner and another codefendant and unburned gunpowder. A shirt bearing the DNA of the petitioner and another codefendant was also recovered in the trunk of that car. There was eyewitness testimony that there were between three and five gunmen. Additionally, police recovered from the scene of the crime an empty magazine, on the bottom of which was the inscription, "Cobray." Firearms and tool mark examiner Edward Jachimowicz testified that at least four weapons had been used in the shootings on October 12, 2001, including a Cobray M-11. Finally, police discovered in the petitioner's home a pistol cleaning kit intended for, inter alia, a nine millimeter style handgun. Detective John Bashta of the New Haven police department testified that nine millimeter ammunition could be fired from the Cobray M-11. To the extent that the petitioner posits that the outcome of the trial would have been different because much of the evidence was circumstantial, we repeatedly have

observed that "there is no legal distinction between direct and circumstantial evidence so far as probative force is concerned." (Internal quotation marks omitted.) *State* v. *Hart*, 118 Conn. App. 763, 778, 986 A.2d 1058, cert. denied, 295 Conn. 908, 989 A.2d 604 (2010). As such, there is not a reasonable probability that, but for counsel's deficient performance, the result of the trial would have been different. We, therefore, conclude that the petitioner has failed to meet his burden of demonstrating that his claim involves issues that are debatable among jurists of reason. Accordingly, the court did not abuse its discretion in denying the petitioner's petition for certification to appeal as to the petitioner's first claim. This claim is dismissed.

## II

We next review the petitioner's claim of ineffective assistance of counsel relating to his having pleaded guilty on three firearms charges. The court made the following findings relevant to this claim: "Carty testified at the habeas trial that he felt that if the theft of a firearm charges were presented to the jury, the petitioner would have been convicted of murder and that it was in his best interest to plead guilty. He also testified that the state's attorney assured him that the pleas would not be used against the petitioner at the upcoming trial. The petitioner testified that he would not have pleaded guilty if he knew the pleas could be held against him, and that . . . Carty promised him [that] they could not be used in the trial. He also testified that he discussed the issue with . . . Carty, but that Carty did not tell him why he advised pleading guilty. The record of the criminal trial reveals no express promises, on the record at the plea hearing or otherwise in writing, that the prosecution would not seek to introduce the pleas at the upcoming trial.

"The advice to plead guilty in this case might have been considered a sound strategy if . . . Carty had

taken affirmative steps to ensure that the guilty pleas would not be admitted at the subsequent trial. There is, however, nothing in the record of the plea hearings that would prevent the state from introducing his pleas of guilty to three counts of theft of a firearm at the trial, the sole stated purpose of the pleas. Otherwise, there was no benefit to the pleas, for which no bargain was made and for which the maximum sentences were imposed; they served simply to eliminate an extra burden the state had to prove. The failure, therefore, lies not necessarily in advising his client to plead guilty, but in failing to sufficiently protect his client's interests by ensuring the pleas would not be admitted at trial. Barring some clear expression on the record by the state that it would not seek to introduce the pleas at the upcoming trial, the only reasonably foreseeable effect of the guilty pleas would be to bolster the state's case on the other charges without any benefit to the petitioner. Therefore, even viewed through the soft-focus lens to which an attorney's tactical decisions are entitled, this failure on . . . Carty's part constitutes deficient performance. . . .

"Nevertheless, the petitioner cannot establish the prejudice necessary to meet the second prong of *Strickland-Hill*. Had he gone to trial on the theft of a firearm charges, it is unlikely that he would have prevailed. . . . In short, the petitioner has failed to demonstrate that, had he chosen to not plead guilty, the outcome of the trial on the theft of a firearm charges would have been different. Therefore, he has failed to meet the second prong of *Strickland-Hill*." (Citation omitted.)

On appeal, the petitioner claims that the court properly found that Carty's performance relating to the petitioner's guilty pleas was deficient but improperly found that the petitioner was not prejudiced by that deficient performance. Specifically, the petitioner contends that he would not have pleaded guilty had he known that

the pleas could be introduced at trial. He further contends that although the court stated that it was applying the prejudice prong set forth in *Hill*,[3] which pertains to guilty pleas, it instead applied the prejudice prong set forth in *Strickland*, which applies to guilty verdicts.

We agree with the habeas court that Carty's performance was ineffective. More particularly, we agree with the court that although Carty's strategic recommendation to the petitioner that he plead guilty was reasonable; see *Hill* v. *Commissioner of Correction*, 117 Conn. App. 867, 876, 982 A.2d 224 (2009) (on review, there is strong presumption that counsel's conduct falls within wide range of reasonable professional assistance), cert. denied, 294 Conn. 930, 986 A.2d 1056 (2010); his failure to follow through on his recommendation by ensuring, on the record, that the state would not seek to introduce those pleas at trial rendered his performance deficient.

We, therefore, next consider whether the petitioner was prejudiced by counsel's deficient performance. As we stated earlier, to satisfy the prejudice prong for ineffective assistance claims resulting from guilty verdicts, the petitioner must demonstrate, pursuant to *Strickland*, "that there exists a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." (Internal

---

[3] When considering the prejudice prong for ineffective assistance claims relating to a guilty plea, in some situations, we have examined whether the outcome of the trial would have been different. "For example, where the alleged error of counsel is a failure to investigate . . . the determination whether the error prejudiced the defendant by causing him to plead guilty rather than go to trial will depend on the likelihood that discovery of the evidence would have led counsel to change his recommendation as to the plea. This assessment, in turn, will depend in large part on a prediction whether the evidence likely would have changed the outcome of a trial." (Internal quotation marks omitted.) *Toles* v. *Commissioner of Correction*, 113 Conn. App. 717, 723, 967 A.2d 576, cert. denied, 293 Conn. 906, 978 A.2d 1114 (2009). In the present case, the petitioner does not claim failure to investigate on the part of Carty.

quotation marks omitted.) *Porter* v. *Commissioner of Correction,* supra, 120 Conn. App. 447. To satisfy the prejudice prong for ineffective assistance claims resulting from guilty pleas, "the evidence must demonstrate, [pursuant to *Hill*], that there is a reasonable probability that, but for counsel's errors, [the petitioner] would not have pleaded guilty and would have insisted on going to trial." (Internal quotation marks omitted.) *Borrelli* v. *Commissioner of Correction,* supra, 113 Conn. App. 810. Because the petitioner's claim relates to his pleading guilty, we analyze his claim under *Hill*'s modified prejudice prong.

On our review of the record, we conclude that Carty's deficient performance prejudiced the petitioner. The petitioner testified that had he known that his guilty pleas would be introduced at trial, he would not have pleaded guilty. Although we have cautioned that such self-serving statements may not be persuasive; see *Williams* v. *Commissioner of Correction,* supra, 120 Conn. App. 425; we are persuaded that the petitioner's statement is especially credible considering that he derived no benefit from pleading guilty, the introduction of those pleas at trial strengthened the state's case on the remaining charges, and, perhaps most significantly, Carty's misrepresentation that the pleas could not be used at trial was material to the defendant's having entered them. Because the petitioner has met his burden of demonstrating that his claim involves issues that are debatable among jurists of reason, we conclude that the court abused its discretion in denying him certification to appeal and further conclude that the decision of the court must be reversed on the merits as to this claim.

The judgment is reversed only as to the petitioner's ineffective assistance of counsel claim relating to his guilty pleas and the case is remanded for further proceedings according to law. The appeal is dismissed in all other respects.

In this opinion the other judges concurred.